STATE of Missouri, Respondent,

v.

Dale HOWARD, Appellant.

No. 52618.

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 18, 1987.

Motion for Rehearing and/or Transfer Denied Sept. 30, 1987.

Application to Transfer Denied Nov. 17, 1987.

Mary Clare McWilliams, St. Louis, for appellant.

William L. Webster, Atty. Gen., Jeffrey Philip Dix, Asst. Atty. Gen., Jefferson City, for respondent.

KAROHL, Judge.

Defendant appeals after convictions for the crimes of first degree murder, Section 565.003 RSMo 1978 (now repealed and replaced by Section 565.020 RSMo Cum. Supp. 1984, effective October 1, 1984), armed criminal action related to commission of murder, Section 571.015 RSMo 1978, burglary in the first degree, Section 569.160 RSMo 1978, and armed criminal action in the commission of the burglary. Defendant was found not guilty on the alternative charge of capital murder, Section 565.001 RSMo 1978 (now repealed and replaced). The indictment alleged, in the alternative, first degree murder where "such killing was committed in the perpetration of or attempt to perpetrate the felony of robbery." Robbery was not separately charged. The jury determined and the court imposed a life sentence on the charge of first degree murder, a term of five years on the burglary charge, and three year terms on each armed criminal action charge. The sentences on the lesser crimes were made concurrent to the life sentence and concurrent to each other.

We have carefully said defendant appeals after conviction and sentence. It is not clear that he has appealed from all convictions. The sole claim of error appears to relate only to the conviction for first degree murder and, perhaps, the related crime of armed criminal action in the commission of that crime. The sole claim of error argued to this court is:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING DEFENSE OBJECTIONS TO THE ADMISSION IN EVIDENCE OF ALL EXTRA-JUDICIAL STATEMENTS, WRITTEN STATEMENTS, AND THE CONFESSION OF DEFENDANT. THE STATE'S EVIDENCE PROVED THAT ON JANUARY 14, 1984 THE POLICE ANSWERED A CALL FROM THE ALLEGED VICTIM'S HOME AND THAT THE ALLEGED VICTIM DIED A WEEK LATER. THE STATE'S EVIDENCE WAS INCONCLUSIVE AS TO THE CAUSE OF THE VICTIM'S DEATH AND, HENCE, THE CORPUS DELICTI OF MURDER WAS NOT PROVED. THE STATE OFFERED NO EVIDENCE AS TO THE COMMISSION OF THE CRIME OF ROBBERY, THE OFFENSE UNDERLYING THE CHARGE OF FELONY MURDER. UNLESS THERE IS INDEPENDENT PROOF, EITHER CIRCUMSTANTIAL OR DIRECT, OF THE ESSENTIAL ELEMENTS OF THE CORPUS DELICTI, EXTRA-JUDICIAL ADMISSIONS, STATEMENTS OF CONFESSIONS OF THE ACCUSED ARE NOT ADMISSIBLE IN EVIDENCE.

If we liberally construe the claim of error in defendant's favor the claim of error relates only to the first degree murder conviction. We understand the claim to be that the state failed to prove the corpus delicti of the murder by evidence independent of extra-judicial statements, written statements and a confession by the defendant; that absent such proof the statements were not admissible to supply any missing proof of corpus delicti or as evidence of defendant's criminal agency. The claim of error assigns two specific deficiencies in the state's proof of corpus delicti; (1) the cause of death was not proven and (2) the underlying crime of robbery was not proven. Nothing in this claim relates to the charge of burglary or the charge of armed criminal action related to the burglary. This conclusion is supported by an analysis of the argument portion of defendant's brief, which does not mention the burglary or the related armed criminal action. With this explanation we review an appeal from the conviction and sentences for first degree murder and armed criminal action related to that crime.

On January 14, 1984 Alfred Boedeker and his wife Estelle lived at 5934 Alpha, in the City of St. Louis. Defendant was a neighbor. In the early afternoon of that day a police officer was called to the Boedeker home. He was met at the door by Estelle, whose face was cut and bruised. He found her husband lying on the floor in a semiconscious state. The furniture was in disarray. Mr. Boedeker, age 87, was conveyed to a hospital. He died on January 21, 1984.

■ The cause of death was established by the testimony of a pathologist who performed an autopsy. He found recent injuries including multiple contusions, abrasions and lacerations predominately centered around the head and face. These included injuries on the top of the head, the nose, an eyelid and the cheekbone. He also found evidence of an old heart attack, very bad coronary arteries, and grossly enlarged lungs indicating the presence of pneumonia in both lungs. He found subarachnoid hemorrhage to the brain. There was a swelling of the brain which was found due to trauma. He concluded that the immediate cause of death was bronchial pneumonia which was traceable to the hospitalization and coma "that in turn was due to the fact that he had brain damage secondary to multiple, traumatic injuries, blunt trauma to the head." This evidence serves to overcome defendant's claim that the state's evidence was inconclusive as to the cause of the victim's death.

The pathologist's testimony also provided evidence that the head injuries were a result of being struck by an instrument wielded by another and not from an accident. The doctor concluded "he was hit by something rather than something that he hit." His conclusion was based upon the existence of multiple injuries in different areas and the fact that the injuries were primarily localized about the head. His conclusions were stated to be "based on reasonable medical certainty." This evidence was sufficient to support a finding that Mr. Boedeker died as the result of an assault which was the criminal agency of someone other than the deceased.

Estelle Boedeker was an endorsed witness for the state. She was 84 years old when the events occurred. At the request of counsel for defendant, the court told the jury that whether or not she testified had nothing to do with any injuries that she received as a result of the incident. Her absence is otherwise not explained. She was the only eyewitness available to describe what occurred in her home on January 14, 1984 with the possible exception of the party responsible. Therefore, there was no evidence independent of statements of the defendant to implicate defendant in any crime. There was no evidence of a robbery except from his statements.

On April 3, 1986, more than two years after the events at issue, defendant made three statements to Detective Richard Brogan and his partner, Detective Don Whitling. There never was any dispute about the voluntary nature of the statements. The only objection was that they were "extra-judicial statements and they can not be used for the purpose of proving the corpus delicti of the crime and the State hasn't proved any corpus delicti of the crime." The corpus delicti objection was overruled. It was preserved in defendant's motion for new trial.

The manner in which the statements were obtained is noteworthy because it indicates extraordinary competent performance of police duties with proper respect for defendant's rights. The statements were obtained more than two years after the crimes occurred. The police had not forgotten Alfred Boedeker.

Detective Brogan was acquainted with defendant. They met in 1982 when defendant was the victim of a robbery and shooting. Subsequently, Detective Brogan arrested the two men responsible. Thereafter, and from time to time, Brogan talked to defendant about incidents which occurred in the police district. On several occasions Detective Brogan gave defendant a few dollars in exchange for information. On January 16 and again on January 20, 1984 Detective Brogan spoke with defendant about the Boedeker matter and defendant promised to communicate anything he

may hear on the street about the Boedeker incident.

On April 3, 1986 Detective Brogan and Detective Whitling saw and approached defendant walking along a sidewalk. Defendant honored Brogan's request to talk and got into the back seat of the police car. Brogan initiated the conversation by suggesting in a general way that something very important was going on, that things had developed since the last time they talked. Defendant volunteered "I'll talk to you about anything; is this about what happened over there by my street?" [The defendant, not the officers, were the first to mention the Boedeker matter.] Brogan acknowledged that it was and read defendant his Miranda rights. Defendant acknowledged his rights. He repeated that they could talk about anything. Defendant then voluntarily made a number of incriminating statements including: "All that trouble happened way back when I was drinking"; "trouble with the old man"; "I used to drink a lot then"; "I don't drink anymore"; "Well, I was drunk"; "I was drinking a lot then"; "I don't drink no more." "I went up to rob the old man, but I just wanted a couple of dollars"; "he just went too far"; "I ran out of money and I just went up to the old man's house just to get some money so I could buy some more beer"; "I went up there and knocked on the door—and it opened up"; "I pushed the door open"; "I told the old man I wanted some money, but he refused to give it to me, and he gave me some trouble"; "he was like yelling at me and he raised his fist so I just hit him." In his statement, defendant explained that the old woman came into the front room and gave him some money to get out of the house and that both people were sitting on the floor when he left.

The detectives then placed defendant under arrest and conveyed him to the Sixth District Station. Defendant then confirmed that what he had said in the police car was true and he agreed to make a handwritten statement. He did so after signing a waiver form. Defendant acknowledged that the detectives helped him with his spelling and wrote the following:

I told the police that I went to the old man's house and knocked at his door, so the old man opened the door, I went into the house with a stick. I went into the house and the old man was yelling at me. All I wanted was some money. He tried to hit me but I hit him with my stick three times. He was yelling at me so his wife came into the front room so I hit her. I was drinking a lot. That's why I tried to get some money that day. I remember it was a Saturday and this house was just up from where I lived. All I got was a purse that had some money in it. When I left the old couple was on the front room floor. /s/ Dale Howard.

Defendant then accepted an invitation to record his verbal and written statement on a TV tape. The tape was played for the jury. It included a full recorded waiver of rights. In substance, defendant's written statement was read to him and acknowledged. He admitted being "pretty loaded" at the time of the crime, but claimed that his memory of the event was good. In the remainder of the taped statement defendant indicated he knew the Boedekers as neighbors; denied having a stick; said Mrs. Boedeker answered the door and he pushed his way in; denied hitting Mr. Boedeker, but admitted pushing him a little bit; admitted he accepted the lady's proposal that if it was money he wanted she would get it; repeatedly denied that he struck Mr. Boedeker with his fist or anything; admitted receiving $30 from Mrs. Boedeker; denied that he touched or took anything else from the house; claimed he never asked for anything and that Mrs. Boedeker suggested she would give him money.

The question presented by defendant's claim of error is whether the court erred in admitting defendant's three statements over an objection that there was no independent proof of the corpus delicti of first degree murder. That was the trial court objection. It was a basis for motions for judgment of acquittal and defendant's motion for new trial. Defendant's theory in each is the statements are inadmissible over objection unless and until the state

proves "the corpus delicti including the criminal agency of the defendant as the cause of the victim's death. The state can not rely on any extra judicial statement of the defendant without proving the corpus delicti—including the criminal agency of the defendant as the cause of the victim's death in the homicide count."

■ It is basic that in order for there to be a conviction of a crime the fact that a crime was committed must be proven. Hence, the law requires that the existence of the crime be proven by evidence independent of mere confession of guilt. Corpus delicti is "the body of the offense charged." *State v. Willoby*, 34 S.W.2d 7, 8 (Mo.1930). The concept applies to the prosecution of any criminal offense. For example, in *Willoby* the court described the corpus delicti of the offense charged to be illegal and felonious transportation of intoxicating liquor. In *State v. Skibiski*, 245 Mo. 459, 150 S.W. 1038 (1912) corpus delicti was discussed on defendant's claim that there was no independent evidence that he stole a steer belonging to his neighbor. The *Skibiski* case has frequently been cited by Missouri courts as a leading case on the issue of proof of corpus delicti. It was there said "If there is evidence of corroborating circumstances which tend to prove the corpus delicti and correspond with circumstances related to the confession, both the circumstances and the confession may be considered in determining whether the corpus delicti is sufficiently proved in a given case." *Skibiski*, 150 S.W. at 1039.

■ In a murder case, the corpus delicti consists of two elements; (1) the death of the person alleged to have been murdered, and (2) the criminal agency of someone other than deceased causing the death. *State v. McQuinn*, 361 Mo. 631, 235 S.W.2d 396, 397 (1951). "It is undoubtedly the rule that confessions of a crime not made in open court or before a committing magistrate and without proof aliunde that a crime has been committed will not sustain a conviction. However, it is equally well established that full proof of the corpus delicti independent of the defendant's extrajudicial confessions is not required. (cita-

tions omitted) As said in *State v. Thompson*, 333 Mo. 1069, 1080, 64 S.W.2d 277, 282 [Mo. banc 1933], 'On the contrary, what seemed to be only slight corroborating facts have been held sufficient.' (citation omitted)" *State v. McQuinn*, 235 S.W.2d at 397. The factual similarity of *McQuinn* and the present appeal as well as the same claim of error suggests a more detailed discussion.

In *McQuinn*, defendant was convicted of murder in the second degree of Mary Hammer, a spinster, eighty-two years of age at the time of her death. She was a recluse, living alone. Her body was found in a barn located near her home. The state's theory was that defendant and another proceeded to her home for the purpose of robbery. She was struck over the head with her own crutch, rendered unconscious, carried from her home to the barn and there left to freeze to death. The court found the first element of the corpus delicti, death, was undisputed. The second element, criminal agency of someone in causing such death, was also found because defendant's confession contained statements of fact which corresponded with the physical circumstances found at the scene. Her body was found where defendant said she was placed; in transporting the unconscious victim one shoe came off. Her crutch was broken into pieces, the body bore evidence of wounds in areas described in the confession. These and other points of similarity were found to satisfy the requirement of corroborating circumstances and sufficient to render the confession admissible as against an objection of failure to prove corpus delicti as a pre-condition to admission.

■ In the present case the element of death is undisputed and the matter of causation was supported by the evidence. We also find that the evidence corroborating defendant's statements was sufficient and that the court did not err in admitting the statements over an objection of failure to prove corpus delicti. Defendant's statement confirms the fact that there were two people in the home, Alfred and Estelle Boedeker. Alfred Boedeker's head injuries

were consistent with having been struck by a stick with at least three blows. Mr. Boedeker was found on the living room floor where defendant's statements described him to be. Defendant also added to his statements that when he left the Boedeker's he went to his home and washed an automobile. During that activity he saw the police officers come to the Boedeker's home for purposes of investigating the events. Accordingly, he was in the vicinity and aware of the immediate investigation. The written statement also acknowledged that he struck Mrs. Boedeker. On investigation the police found that she too had bleeding wounds. Not only did the evidence together with the statement establish both elements of a homicide, they also established defendant's criminal agency. This is more than was required. The state satisfied the second element by proving that the crime charged was committed by someone, not necessarily the defendant. *State v. Garrett*, 595 S.W.2d 422, 430 (Mo. App.1980). Further, the testimony of the pathologist supported a finding of death at the hands of another.

We find the decision in *State v. Goodwin*, 352 S.W.2d 614 (Mo. banc 1962) as additional support. That case involved a prosecution for first degree murder. Because of the nature of the charge the Supreme Court elected to liberally review the "claims" of error, one of which in some general way alluded to the requirement of proof of corpus delicti independent of an extra-judicial confession. The court reviewed substantially the same authorities considered in this opinion, particularly *State v. McQuinn* and *State v. Skibiski*. It noted the rule for proof of corpus delicti by combining corroborating circumstances with a confession to determine sufficiency. It then made the following statement:

"And in *State v. Morro*, 313 Mo. 98, 108, 281 S.W. 720, 722, the rule was put this way: 'If there is evidence of corroborating circumstances which tends to prove the crime and corresponds with circumstances related in his confession, both the circumstances and the confession may be considered in determining whether the corpus delicti is sufficiently

proved. If a confession is made which enables the state to discover corroborating evidence of the particular crime confessed, the corroborating evidence need not be sufficient, independent of the confession, to establish complete proof that the crime is committed. (Citing Cases.)' "

*State v. Goodwin*, 352 S.W.2d at 621.

Defendant's argument, based on the only objection at trial and the only error preserved in the motion for new trial, is that the state was not entitled to use defendant's statements because the corpus delicti of the charged crime had not been first proven. What we have said disposes of that argument relating to murder first degree. However, defendant also claims that the corpus delicti of the charged crime, murder first degree related to robbery, required independent proof of the underlying robbery as the intended felony at the time of the murder. This argument misinterprets the requirement of proof of corpus delicti. It confuses burden of proof of the elements of the crime with proof that there was a crime committed, the charged crime of murder in the first degree. The elements of robbery are not part of the corpus delicti of the murder charge, but rather an allegation which the state was required to prove in support of the indictment based on that charge. The corpus delicti objection presented to the trial court required a consideration of whether or not there was evidence of death and evidence of causal criminal agency of someone. The trial court properly ruled that there was.

We affirm.

PUDLOWSKI, P.J., and CRANDALL, J., concur.