**STATE of Missouri, Respondent,**

v.

**Stephen E. DAVIS, Appellant.**

**No. WD 42373.**

Missouri Court of Appeals,
Western District.

Aug. 21, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 2, 1990.

Application to Transfer Denied
Nov. 20, 1990.

---

David S. Durbin, Appellate Defender, Anthony P. Cardarella, Asst. Appellate Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before NUGENT, C.J., FENNER, J., and WASSERSTROM, Senior Judge.

NUGENT, Chief Judge.

Defendant Stephen E. Davis appeals from the judgment on his conviction by a jury on one count of second degree murder, one count of first degree attempted robbery, and two counts of armed criminal action. We affirm the judgment of the trial court.

Mr. Davis argues that the trial court erred in overruling defense counsel's motion for judgment of acquittal at the close of the state's evidence because the state failed to introduce sufficient independent proof of all the essential elements of the corpus delicti of attempted robbery and felony murder. He further contends that the trial court erred in submitting the verdict director for attempted robbery because

the state had failed to show that an attempted robbery had occurred.

The evidence shows the following: On the evening of May 16, 1988, defendant Davis and three companions met at Thompson's cafe on the corner of 31st and Troost Avenue. At about 9:45 the quartet entered Mr. Davis' car and he began driving, looking for someone to rob. Approaching the intersection of Armour Boulevard and Main Street sometime after ten o'clock, they sighted a pedestrian. In a later statement to the police, defendant Davis described him as a blond white man wearing dark pants and a white T-shirt. The group chose him as their robbery victim.

The defendant's three passengers got out of the car at the Burger King restaurant on the northeast corner of Armour and Main, instructing him to drive to 37th Street and to wait for them just east of Main. He drove to 37th Street and could see his companions following Mr. Henges on 36th Street. He circled once, and as he returned to 37th Street, heading east towards Walnut Street, he saw his companions running toward him from Warwick Boulevard, a little more than a block away. They quickly entered the car, and he drove away. One of his companions, Joseph Lee, displayed a pistol and exclaimed, "I had to pop him," or "I had to pop that dude," "pop" in street terminology meaning "to shoot."

The quartet spoke no more but drove to Thompson's where the defendant parted company with his companions sometime after eleven thirty. According to his statement, he then drove to his girlfriend's apartment about fifteen blocks away, arriving during a one o'clock news broadcast.

At 10:25 that same evening, a Kansas City patrolman responding to a dispatch found Richard Henges near the intersection of 36th and Warwick lying dead in a pool of blood. The wristband of his watch bore signs of a struggle. At about the same time, a few blocks away Judy Parrish found Mr. Henges' credit cards on the street. After a telephone call from Ms. Parrish, Susan L. Peebles, Mr. Henges' estranged wife, who dined with him earlier that evening, retrieved the cards from Ms. Parrish. As she approached the intersection of 36th and Warwick, Ms. Peebles noticed flashing police lights and stopped to investigate. She found her husband's bloodied clothes, and soon went to St. Luke's hospital, where she identified his body. An autopsy revealed that he died from a bullet wound above an eyebrow. Neither the police nor the coroner found any evidence of powder burns on the victim's hands or face.

Acting on an informant's tip, the police questioned Sharon Wilson, defendant's girlfriend. On May 22, officers went to her apartment to find Mr. Davis. He fled on foot, but they caught him after a chase and took him to police headquarters for questioning. After waiving his *Miranda* rights, the defendant admitted that on the night of Mr. Henges' death he and his companions had decided to rob the blond man they sighted near Armour and Main and that upon returning to the car Mr. Lee said that he had "popped" the man.

The police released the defendant but questioned him again on May 27 and obtained a written statement from him. Detective Rickey Pilgrim reported that during the interview he asked defendant Davis about a black wallet that he and his three companions reportedly examined at Thompson's shortly after Mr. Henges' May 16 murder. Detective Pilgrim wrote that the defendant explained that the wallet came from a robbery of a man near 37th and Main on the evening of May 19.

The grand jury indicted the defendant on one count of second degree murder under § 565.021.1(2),[1] which includes within the definition of murder in the second degree felony murder, in which a person causes the death of another during the perpetration or attempted perpetration of a felony. Another count of indictment also charged him with one count of first degree robbery and two counts of armed criminal action.

At trial, Susan Peebles testified that Mr. Henges had brown hair but that his hair

---

**1.** All sectional citations refer to Revised Statutes of Missouri, 1986.

had a blond tint at the front and on the top of his head. In addition, she testified that before they parted at about eight o'clock on the night of his death he had just cashed a check. The defendant objected several times to the introduction of his statements to the police, arguing that the state had failed first to introduce evidence of the corpus delicti of either murder or robbery. The court overruled those objections.

The state substituted a jury instruction for first degree attempted robbery for an instruction on first degree robbery. The jury found the defendant guilty of second degree murder, first degree attempted robbery and two counts of armed criminal action. The court sentenced him to a total of twenty-one years in prison, and he appealed.

In his first point on appeal, the defendant contends that the trial court erred in overruling his objections to the introduction of any evidence pertaining to the inculpatory statements he made to the police. He argues that the state could not introduce that evidence because it failed to prove the corpus delicti of either second degree murder or attempted robbery.

■ In addressing a challenge to the sufficiency of evidence at trial, an appellate court must view the evidence favoring the prevailing party and all reasonable inferences drawn from it as true and ignore all contrary evidence and inferences. *State v. Mallett,* 732 S.W.2d 527, 530 (Mo.), *cert. denied,* 484 U.S. 933, 108 S.Ct. 309, 98 L.Ed.2d 267 (1987).[2] *See also Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The court employs this standard in reviewing all evidence, direct as well as circumstantial. *State v. Williams,* 652 S.W.2d 102, 111 (Mo.1983). We must determine whether the state presented evidence sufficient to allow submission to the jury. *State v. Roby,* 756 S.W.2d 629 (Mo.App.1988).

■ To prove guilt of any crime, the state must first demonstrate the crime's corpus delicti, or body of the crime. *State*

v. *Howard,* 738 S.W.2d 500, 503–04 (Mo. App.1987). The corpus delicti consists of two elements: (1) that the loss or injury charged has occurred, and (2) that someone's criminal agency caused that loss or injury. *State v. Ziegler,* 719 S.W.2d 951, 954 (Mo.App.1986). In a homicide case, proof of the corpus delicti requires proof of (1) the victim's death and (2) the criminal agency of another as the cause of the victim's death. *State v. Priest,* 660 S.W.2d 300, 304 (Mo.App.1983). In addition, the state must demonstrate the accused's criminal action, which, although not a part of the corpus delicti, it may prove by the same evidence it uses in proving the corpus delicti's second element. *Id.*

■ To prove felony murder, the state need not show an intent to kill but need only show that the homicide occurred in the perpetration or attempted perpetration of a felony. § 565.021.1(2) (1984); *State v. Mannon,* 637 S.W.2d 674, 677 (Mo.1982) (en banc). Moreover, a person guilty of an underlying felony becomes accountable for every homicide committed in the perpetration of the felony even if a confederate actually committed the fatal act. *State v. Moore,* 580 S.W.2d 747, 751 (Mo.1979) (en banc).

■ The corpus delicti of first degree robbery demands proof of (1) the taking of property (2) by force or fear. *State v. Frentzel,* 730 S.W.2d 554, 558 (Mo.App. 1987), *citing State v. Hawkins,* 165 S.W.2d 644, 646 (Mo.1942). To prove the charge in the present indictment, the state had to show that the defendant's companions possessed a deadly weapon during the robbery of Mr. Henges. § 569.020.1(2). To prove attempted robbery, the charge upon which the court instructed the jury, however, the state needed only to show that they had taken a substantial step towards the commission of first degree robbery, § 564.011.1, and that they intended to rob their victim. *State v. O'Dell,* 684 S.W.2d 453, 461 (Mo.App.1984), *cert. denied,* 488

---

2. Unless otherwise noted, we do not denominate Missouri Supreme Court cases decided after October 28, 1982, as "en banc" decisions because

since that date the court has only decided cases en banc. We denominate as "en banc" cases decided en banc before that date.

U.S. 930, 109 S.Ct. 319, 102 L.Ed.2d 337 (1988).

To obtain a conviction, the state may not rely exclusively on an accused's extrajudicial statement; it must prove the crime's corpus delicti. *State v. Howard, supra,* 738 S.W.2d at 504. As long as the state proves a crime's essential elements, however, evidence of the corpus delicti need not precede admission of a defendant's inculpatory statement. *State v. Friesen,* 725 S.W.2d 638, 639 (Mo.App. 1987). Moreover, the statement and full proof of the corpus delicti need not stand separately, but may augment each other in providing proof of the crime's essential elements. *Id.* When circumstances independent of the inculpatory statement tend to prove matters recited in the statement and corroborate the statement, the reviewing court may deem the proof of the corpus delicti sufficient. *Id.* at 640. *See also State v. Howard, supra,* at 504.

Here, the state sufficiently proved the corpus delicti of both second degree felony murder and first degree attempted robbery. First, the evidence shows that Mr. Henges did not shoot himself. Neither the investigating officer nor the Jackson County medical examiner found any evidence of powder burns on his hands or face. Indeed, the pathologist testified that the fatal shot did not come from close range. Investigators found no firearm at the scene. Thus, the reasonable inference follows that he died at the hands of another.

In addition, the state introduced evidence that shortly after his death Ms. Parrish found Mr. Henges' credit cards in the street several blocks from his body, that his watch's ripped wristband bore signs of a struggle, and that, despite Ms. Peeble's testimony that he had just cashed a check, he had only thirty-six cents on his person when the police discovered his body. Moreover, reasonable persons could have concluded that Mr. Davis lied or misspoke himself about the time sequence he described in his statement. According to his statement, he drove about twelve blocks directly to Thompson's after his companions reen-tered his car at about ten thirty, arriving after it had closed at eleven thirty. He then drove directly to his girlfriend's, about fifteen blocks from Thompson's, but did not arrive until after one o'clock. Further, the police report of a statement he gave on May 27 reasonably implied that he lied when he explained that a wallet he and his companions reportedly examined at Thompson's shortly after Mr. Henge's death belonged to someone the quartet had robbed two days after his death. This evidence, albeit circumstantial, will support the reasonable inference that Mr. Davis and his confederates had either robbed or tried to rob Mr. Henges.

In addition, the state introduced into evidence Mr. Davis' videotaped statement to the police. In it he admitted that he and his companions planned to rob someone the night that Mr. Henges died. He also admitted that they chose as their victim a man who resembled Mr. Henges, one whom they saw walking in the area near the spot where the police found Mr. Henges' body. He admitted that he saw his companions following their victim east on 36th Street, toward Warwick. Further, he stated that when Mr. Lee reentered the car he exclaimed that he had shot the man.

After reviewing the combination of Mr. Davis' statement and the direct and circumstantial evidence proffered by the state, we conclude that the state sufficiently proved the corpus delicti of both second degree murder and first degree attempted robbery.

In his second point on appeal, Mr. Davis complains that the trial court erred in overruling his objection to the submission to the jury of the instruction on first degree attempted robbery. He argues that the state failed to offer evidence that an attempted robbery of Mr. Henges had occurred.

A trial court errs if it does not instruct the jury on all lesser included offenses supported by the evidence. *State v. Story,* 646 S.W.2d 68, 73 (Mo.1983). Of course, the court may not instruct on a charge if evidence does not support submission of the charge to the jury. *Id.* As we

have shown above, ample evidence of robbery and its included lesser offense of attempted robbery supported submission to the jury of the charge of first degree attempted robbery. Therefore, Mr. Davis' second point on appeal must also fail.

For the foregoing reasons, we affirm the judgment of the trial court.

All concur.