**STATE of Missouri, Respondent,**

v.

**Raymond A. SCHMIDT, Appellant.**

**No. WD 39196.**

Missouri Court of Appeals,
Western District.

Feb. 23, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 29, 1988.

Application to Transfer Denied
May 17, 1988.

Sean D. O'Brien, Public Defender, Jo Ann Arnold, Asst. Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jared R. Cone, Asst. Atty. Gen., Jefferson City, for respondent.

Before LOWENSTEIN, P.J., and MANFORD and NUGENT, JJ.

LOWENSTEIN, Presiding Judge.

Schmidt appeals convictions for murder in the second degree (felony murder) for which he received a 23 year sentence, and for first degree arson with a consecutive sentence of fourteen years. The sufficiency of the evidence presented to sustain the jury verdict is not an issue. The basic facts are as follows: very early in the morning of November 6, 1985 a fire burned the apartment belonging to Schmidt's brother. The brother's roommate died in the fire. Experts testified the fire had been set. Schmidt's brother escaped the blaze. Schmidt had been at the apartment on the evening of the fifth at about 7:00 p.m., requesting his brother to have a drink. The invitation was declined and a disgrunted Schmidt left. A witness who lived across the alley from the fire scene heard noises in the alleyway at about 11:30 that night. He saw a toolbox, which belonged to Schmidt's brother, in the alley. The door to the apartment was open, and soon Schmidt came out and told the witness he was on his way to work. At about one a.m. the fire had engulfed the apartment. It started in some bags in the hallway and spread to the apartment in question.

On the evening of November 6th, Schmidt was picked up by the Kansas City Police after he was found intoxicated and staggering in the middle of Main Street near Pershing Road. He was booked and questioned about the arson on November 7th starting about 12:40 p.m. At 4:55 p.m. questioning was turned over to other officers, and five minutes later Schmidt broke down and then gave a statement admitting he set the fire, had taken the tool box, and that he had been drunk at the time. The statement contained references to his alcoholism, suicidal traits and to his having previously set fires.

The first point to be taken up concerns Schmidt's statement. He contends it should have been suppressed since it was involuntary, because the statement was obtained by "psychological coercion" and promises of help.

The facts leading up to the confession are now in order. The fire occurred at 1:00 in the morning on November 6. At 11:00 that night Schmidt was taken into custody after found wandering while intoxicated in the middle of the street. He was first questioned about the fire by a set of detectives on November 7th starting at 12:45 in the afternoon. That round of questioning went until 4:55 p.m. The officers knew of Schmidt's drinking problems and suicidal tendencies, including his having tried to drink paint thinner the night before. He indicated he might later attempt to take his life. He appeared depressed. Just after the second set of detectives took over the questioning at 4:55 the following events happened as recounted in the testimony of one of the detectives:

A. I sat in front of him, I asked him to look at me. He first refused. And then he looked at me and I told him that he had a problem with alcohol, he had a problem with fire and he had a problem with this dead body. And it is time to do something about it.

Q. And then he broke down crying and related to you the information that is contained in this form?

A. Yes, sir.

Schmidt says on appeal his depression and emotional turmoil had a significant impact on his behavior, and coupled with suicidal tendencies along with interrogation overcome his will and caused the statement to be made. He claims psychological coercion because the second set of detectives appeared sympathetic and played on his emotional weakness. The officers denied making any threats, using coercion, or making promises.

■ Schmidt relies on *State v. Sherrill,* 657 S.W.2d 731, 739 (Mo.App.1983), which says the test for voluntariness is whether in the totality of the circumstances "psychological coercion was of such a degree that defendant's will was overcome at the time he gave the statements or confessed." He directs the court to *State v. Higgins,* 592 S.W.2d 151, 158 (Mo. banc 1979), and *State v. Flowers,* 592 S.W.2d 167, 169–70 (Mo. banc 1979). *Higgins,* however, notes deference given to the trial court's first hand knowledge from the suppression hearing, and its' determination of credibility. There the court noted there was substantial evidence to support the state's burden to show the statement was voluntary. 592 S.W.2d at 158. In *Flowers,* there was expert testimony to show the accused was submissive, below average intelligence and had a low tolerance for stress, but the trial court's decision, under the circumstances, to declare the statement voluntary, was upheld. 592 S.W.2d at 169–70. In this case, as in *Higgins, supra,* the court cannot say his confession was involuntary. Though the police knew of his problems there is no evidence the police went beyond the proper bounds to secure a confession in which Schmidt stated he had done wrong, was "overcome with remorse," and, "very sorry for what I did."

■ Next considered is Schmidt's assertion that portions of his statement should have been excluded from evidence as involving evidence of other crimes. The particular portion offered read as follows:

I don't know why I set the fire. I didn't want to hurt anyone. I would approximate the time that I set the fire to be around midnight or maybe 12:30 am. When I got home, I went straight to bed and to sleep. The next morning, I heard on the TV that a man had died in this fire. I didn't know DONALD GRAY and I felt so bad. I hurt inside knowing that I did that. I couldn't believe it was true. I never intended to hurt anybody. *I would say it's been around a year that I have had an obsession with fire.* I just do weird things when I drink too much.

He contends the underscored sentence should have been blacked out, since the jury could infer he had an obsession with fire, did weird things when he drank, and coupled with the sentence in question,

"suggests to the jury that appellant had in the past committed other arsons and set other fires." This language does not suggest he has committed other crimes. This conclusion is rejected and the point is denied.

Schmidt's next point is somewhat related to the first point. After the interrogation and confession, Schmidt was taken to the Western Missouri Mental Health Center for evaluation and treatment relative to depression and suicidal tendencies. Although contemplated, the case did not involve a defense of mental disease or defect. In cross-examination of the police witness, defense counsel stressed Schmidt's depression and suicidal tendencies and how his statement of confession had not therefore been voluntary. The state put on Dr. Barikh, a psychiatrist from Western Missouri, who testified as follows:

Q  Did you see a patient named Raymond Schmidt immediately after his arrival at Western Missouri Mental Health Center.

A  Yes

Q  I have four questions for you, Doctor. Did you have a conversation with him?

A  Yes

Q  Did what he told you appear to be truthful?

A  Yes.

Q  Did he appear delusional?

A  No.

Q  Did he appear physically or emotionally beaten?

A  Emotionally, yes; not physically.

Q  Emotionally, you mean depressed?

A  Yes. And also heavy guilt feelings.

Q  Doctor, did he have any complaints about the treatment by the police department?

A.  No.

Schmidt alleges the testimony of Dr. Barikh violated § 491.060(5), RSMo 1986, which defines persons incompetent to testify, and reads:

(5) A physician or surgeon, concerning any information which he may have acquired from any patient while attending him in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or do any act for him as a surgeon.

The court first notes a serious question as to whether the testimony even involves testimony concerning information acquired from the patient necessary to prescribe treatment. *State v. Lewis*, 735 S.W. 2d 183, 187 (Mo.App.1987). The brief amount of testimony concerns observations of the doctor, the closest question to the statutory provision is the one asking if Schmidt appeared to be truthful, where the answer was "Yes." Secondly, even if the doctor was incompetent to testify, his answer that Schmidt appeared emotionally beaten would be favorable to the point Schmidt was trying to make. There is no prejudice shown in this case where the evidence of guilt was strong. *State v. Ford*, 639 S.W.2d 573 (Mo.1982); *State v. Sykes*, 628 S.W.2d 653 (Mo.1982). Finally, where as here the defendant has injected an issue in the case, the state is allowed to counteract that issue. *State v. Lingar*, 726 S.W.2d 728, 734–35 (Mo. banc 1987).

Schmidt's next point is related to the previous point, and answered by the court's evaluation of that point. As can best be understood Schmidt contends he was held longer than the twenty hour requirement of Rule 22.06 when taken to Western Missouri. He then says § 632.305.3 RSMo 1986 limits to ninety-six hours the time of detention for observation of a mental disorder. He concludes, without reason, logic or support, he was illegally held when he made statements to Dr. Barikh, which were the fruits of the poisonous tree, and should have been suppressed. This point is denied.

In his next point Schmidt asserts the oft-raised argument of instructional error inherent in MAI–CR2d 1.02 and 2.20 involving the definition of reasonable doubt. This point has been denied in numerous Missouri appellate decisions, one of the more recent cases being *State v. Guinan*, 732 S.W.2d 174, 178 (Mo. banc 1987).

Finally, Schmidt attacks his receiving separate punishments for second de-

gree (felony) murder and for the underlying offense of arson. Section 556.041(1), RSMo 1986, prohibits convictions of more than one offense if one offense is included in the other. Section 556.046.1(1) makes the following definition of an included offense; "[I]t is established by proof of the same or less than all the facts required to establish the commission of the offense changed." To the credit of the state, it admits on appeal the sentences are impermissible under *State v. Morgan*, 592 S.W. 2d 796 (Mo. banc 1980), vacated, 449 U.S. 809, 101 S.Ct. 56, 66 L.Ed.2d 12 (1980), *orig. op. aff'd.*, 612 S.W.2d 1 (Mo. banc 1981). The Missouri Supreme Court has in *Morgan* said the felony relied on to prove intent in a felony murder prosecution is a lesser included offense of the murder. To therefore allow both convictions to stand would violate the double jeopardy provision of the fifth amendment. 592 S.W.2d at page 803. The judgment and sentence in this case for arson is reversed and held for naught. The judgment and sentence of 23 years for second degree murder is affirmed. *Williams v. State*, 646 S.W.2d 848, 850 (Mo.App.1983).