**STATE of Missouri, Respondent,**

v.

**Lamont E. OWENS, Appellant.**

**Lamont OWENS, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 43352.**

Missouri Court of Appeals,
Western District.

Feb. 2, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 30, 1993.

Lew Kollias, Columbia, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before ULRICH, P.J., and SHANGLER and FENNER, JJ.

SHANGLER, Judge.

The defendant Lamont Owens brings a consolidated appeal from eight judgments of conviction and from the order denying post-conviction relief under his Rule 29.15 motion after evidentiary hearing. The judgments of conviction and order denying post-conviction relief are affirmed.

Owens was convicted by jury verdict of murder in the second degree, four counts of armed criminal action, two counts of attempted robbery in the first degree, and one count of assault in the first degree. A total of eighty years in sentences was imposed.[1]

---

1. The conviction on Count I for second degree murder resulted in a 20 year sentence. The conviction on Count II for armed criminal action resulted in a 10 year sentence that was

The sufficiency of the evidence to submit the offenses is not in issue. The facts of the offenses are these:

On February 8, 1989, Lance Turner and his cousin, Darren Norton, arranged with Brenda Taylor to sell crack cocaine from her apartment in Kansas City's Riverview housing project. Ms. Taylor was to receive $100 a day from Turner and Norton for that purpose. Turner and Norton left, and then returned with a supply of cocaine to sell and a magnum which Turner brought for his "protection." He gave Brenda Taylor some crack cocaine as a partial payment for the use of her house. They then began to sell cocaine out of the kitchen to the customers on the street who drove by. The outside sales were being made by two women, who kept a $20 "commission" from every $100 received.

Brenda Taylor became dissatisfied with her payment, so she arranged with Darren Jacobs to rob Turner and Norton of their drugs and money and the thick gold chain that Turner wore around his neck. Jacobs was the leader of the "Riverview Posse," a gang that sold crack cocaine in the Riverview housing project. Jacobs recruited three other gang members, including the defendant Lamont Owens, Joseph Burns and Mikkus Taylor to commit the robbery. Owens, Burns and Taylor went to Jacobs' apartment where he furnished them with ski masks and the weapons that they were to use in the robbery. Jacobs provided the defendant Owens with a 9 mm. handgun, and Taylor with a shotgun. Burns was given a .38 pistol from the trunk of Jacobs' car.

The plan by Jacobs was for Owens, Burns and Taylor to forcibly enter Brenda Taylor's apartment, and rob everyone at gunpoint, including Jacobs. Jacobs was to be dealt with in the same way as the others. They were "to take some dope and made to run concurrently with Count I. The conviction on Count III for attempted robbery in the first degree resulted a sentence of 15 years that was made to run consecutively to Count I. The conviction on Count IV for armed criminal action resulted in a sentence of 10 years made to run concurrently with Count III. The conviction on Count V for assault in the first degree resulted in a sentence of 10 years that was made to run consecutively to Count I

some money from him just to put him in it, too, so they wouldn't think he had anything to do with it." However, when Owens, Burns and Taylor entered the apartment, Turner and Norton had just left through the back door. They were heading for Norton's car intending to leave the Riverview project, when Norton was killed by a shotgun blast to the back of his head. Turner was shot seven times in the leg, arm, stomach and his underarm by a pistol.

When the police arrived minutes later, they found Norton lying dead in the street with shotgun wadding protruding from the back of his head. Turner was leaning up against Norton's car, half-conscious. Police discovered that someone had spray-painted "RVP," which stood for "Riverview Posse," on the side of Brenda Taylor's apartment. Burns was taken into police custody following investigation, and thereafter the defendant Owens, Jacobs, Burns and Mikkus were also taken into custody.

### The Direct Appeal

The defendant Owens raises five points on direct appeal, all as claims of plain error. We decide them on the merits.

### Point I

The first point challenges, as in violation of the double jeopardy principle, the convictions on Count I for second degree murder [§ 565.021.1(2), RSMo 1986], and on Count III for the underlying felony, attempted robbery in the first degree [§§ 564.011, 569.020, RSMo 1986]. And, since the conviction on Count IV for armed criminal action [§ 571.015.1, RSMo 1986] was predicated on the Count III charge of attempted robbery, Owens argues that the convictions for attempted robbery and the related armed criminal action were barred by the and Count III. The conviction on Count VI for armed criminal action resulted in a sentence of 10 years that was made to run concurrently with Count V. The conviction on Count VII for attempted robbery in the first degree resulted in a sentence of 30 years that was made to run consecutively to Counts I, III and V. The conviction on Count VIII for armed criminal action resulted in a sentence of 30 years that was made to run concurrently with Count VII.

conviction for second degree murder, and must be vacated.

The argument is premised on *State v. Morgan,* 592 S.W.2d 796 (Mo. banc 1980) and *State v. Schmidt,* 748 S.W.2d 773 (Mo. App.1988). *Morgan* held that under then second degree [felony] murder § 559.020, RSMo Supp.1975, the convictions for both felony murder and the underlying felony [stealing over $50] were in violation of the double jeopardy principle. The reason ascribed was that "the felony relied on to prove intent in a felony-murder case is a lesser-included offense of the murder." *Id.* at 803[1, 2]. *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980) then issued and decided that the question of whether multiple punishments are authorized where multiple statutes are offended "in a single criminal episode" is a matter of legislative intent. *Id.* at 690, 100 S.Ct. at 1437.

*State v. Olds,* 603 S.W.2d 501 (Mo. banc 1980) responded by holding that multiple punishments for felony murder under then § 565.003, RSMo 1977, and the underlying felony, were precluded because it was not demonstrable that the legislature "intended to allow a court to separately punish a defendant for felony-murder and the underlying felony." *Id.* at 510[12]. The court iterated and adopted that reasoning on remand of *Morgan. State v. Morgan,* 612 S.W.2d 1 (Mo. banc 1981).

The felony murder statute was rewritten thereafter with the explicit expression of intention that punishment for the felony murder "shall be in addition to the punishment for commission of a related felony or attempted felony, other than murder or manslaughter." § 565.021.2, RSMo 1986.

■ It is by now understood as established doctrine that, "in the multiple punishments context" the interest that the Double Jeopardy Clause protects is " 'limited to ensuring that the total punishment did not exceed that authorized by the legislature.' " *Jones v. Thomas,* 491 U.S. 376, 381, 109 S.Ct. 2522, 2525, 105 L.Ed.2d 322 (1989). Its purpose is to guarantee that "sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." *Id.; see also, State v. McTush,* 827 S.W.2d 184, 186[2, 3] (Mo. banc 1992). Thus, where a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those statutes proscribe the "same conduct", the prosecution may seek and the court may impose cumulative punishment under those statutes in a single proceeding without offense to the double jeopardy clause. *Missouri v. Hunter,* 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983); *State v. McTush,* 827 S.W.2d at 186[2, 3].

■ To determine whether the legislature intended multiple punishments for the "same conduct," we look first to the statutes under which the defendant was convicted. If these statutes do not indicate whether the legislature intended to punish cumulatively under each of the enactments, then there is resort to § 556.041, RSMo 1986, our general cumulative punishment statute. *State v. McTush,* 827 S.W.2d at 187[4]; *State v. Villa–Perez,* 835 S.W.2d 897, 903[13] (Mo. banc 1992). Since § 565.-021.2 expressly intends multiple punishments for both second degree felony murder and the underlying felony, such punishments when imposed in a single trial do not constitute double jeopardy.

The decision of this court in *State v. Schmidt,* 748 S.W.2d 773 (Mo.App.1988), cited by the defendant Owens to sustain the contention that convictions for both second degree felony murder under § 565.-021.1(2) and the underlying felony violated the double jeopardy principle, is an aberration and is not followed. It rested on the confession of error by the prosecution that "the sentences were impermissible" under the *Morgan* decision by the Missouri Supreme Court en banc. *State v. Schmidt,* 748 S.W.2d at 777. That imperfect advisement overlooked the explicit directive of § 565.021.2 that punishment for second degree felony murder "shall be in addition" to the punishment for the underlying felony. We agree with the Eastern District of the Court of Appeals in *State v. Dukes,* 819 S.W.2d 394 (Mo.App.1991), that *Schmidt* is

an aberration, and concur in the *Dukes* rationale.

The point is denied.

### Point II

■ The second claim of error again contends that the conviction on Count IV [§ 571.015.1, RSMo 1986] for armed criminal· action violated the double jeopardy principle, but upon a different and cognate theory. Owens points out that the Count III conviction for attempted robbery in the first degree was the predicate felony for both the conviction on Count I for second degree murder as well as the conviction on Count IV for armed criminal action. He argues that there is no legislative authority for such "double use" of a single felony to support convictions for two "greater offenses," second degree murder and armed criminal actions. Therefore, the multiple punishments were unlawful and the conviction on Count IV for armed criminal action must be vacated as in violation of the double jeopardy principle.

The question is, as before, whether the legislature intended to authorize multiple punishments as to those convictions. *Missouri v. Hunter*, 459 U.S. at 366, 103 S.Ct. at 678; *State v. McTush*, 827 S.W.2d at 186[3]. As noted, § 565.021.2, RSMo 1986, provides that the punishment imposed for second degree felony murder "shall be in addition to the punishment for commission of a related felony."

The felonies related to second degree murder in this case were attempted robbery and two counts of armed criminal action. The armed criminal action statute [§ 571.015.1, RSMo 1986], in turn, advises that the punishment imposed for that offense "shall be in addition to any punishment provided by law for the crime committed by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon."

Owens was convicted of two felonies upon Darren Norton, the victim named in the first four counts, second degree felony murder [Count I] and attempted robbery in the first degree [Count III]. He committed both felonies "through the use, assistance, or aid of a dangerous or deadly weapon."

The statutes applicable to each, second degree felony murder and armed criminal action, expressly indicate that the convicted defendant shall be punished separately for all of the offenses committed. The sentences imposed for the convictions on the first four counts are within the express authority of the statutes and hence do not subject Owens to double jeopardy.

*State v. Dowdy*, 774 S.W.2d 504 (Mo. App.1989), cited by Owens, relates not to multiple punishments for the same conduct in the double jeopardy sense, but to whether the particular criminal statute intended to subject the defendant to a double enhancement of punishment. The only coincidence between those disparate inquiries is the necessary resort to statutory construction to determine the particular legislative will. The point is denied.

### Point III

■ Owens next contends that it was plain error for the trial court to fail to declare a mistrial *sua sponte* or take other curative action during the prosecutor's closing argument. It is a contention of error not raised or preserved in the motion for new trial and the appellant seeks plain error review under Rule 30.20.

In the argument on the punishment to be meted to Owens, the prosecutor stated:

So we come to that final decision, Lamont's punishment. What do we tell Lamont Owens and the RVP on murder second degree when they take a human life in a conspiracy that starts February 8th and goes until November of 1989 with those letters? What do we tell Lamont Owens and the RVP? Life imprisonment, ladies and gentlemen. Attempted robbery, the conspiracy that starts and keeps going, fifteen years on each of these counts. Assault in the first degree, this defendant taking a 9 mm. and emptying it, Richardson, holds 14 shells, average amount, 14 shells. Seven into that man's body. Life imprisonment. Four counts of armed criminal action. I'm going to leave that up to you, ladies and gentlemen. You tell the RVP, you tell this community, ı tell Lamont Ow-

**586**

ens what it's worth when you take guns to commit felonies.

Owens complains that this argument "diverted the jury from its duty to consider appellant's guilt on the charged offenses, nothing more or nothing less. By requesting that the jury convict the RVP, Riverview Posse which Officer Schriever described as a 'crack gang,' [the prosecutor] unnecessarily diverted the jury from its responsibility to consider only appellant's guilt or innocence for the charged offenses." The effect was, the argument goes, to encourage the jury "to send a message to the Riverview Posse by conviction of the appellant," and so diverted the jury from its obligation to decide the appellant's guilt or innocence for the offenses charged.

The insinuation of a jury diverted in duty from an impartial assessment of the guilt or innocence of the defendant by allusion to the menace of the uncharged Riverview Posse, which Owens attributes to these remarks, is not evident simply because the comments went to punishment and not guilt.

Moreover, the comments of the prosecutor were supported by the evidence. It was before the jury that Owens and the co-actors were members of the "Riverview Posse," described as a "crack gang." The inference was clear that the assaults and shootings were the reaction by these members of the "Riverview Posse" against two interlopers who had undertaken to set up a drug house in the posse's territory the Riverview projects.

Owens acknowledges that Burns gave testimony that he, Jacobs and Mikkus Taylor were members of the "Riverview Posse," but complains that the evidence that the posse was a "drug gang" and sold "crack cocaine" came from Officer Schriever, who merely recited hearsay. Owens argues, accordingly, that "the evidence was not sufficient to allow the prosecution to make the closing argument an issue [sic]." The evidence, whether or not hearsay, came in without objection, and so is probative and competent. The remarks by the prosecutor, therefore, were justified by the evidence. *State v. Wade,* 826 S.W.2d 843, 845[3] (Mo.App.1992).

█ The defendant Owens objected neither to the testimony by the officer, of which he complains, nor to the argument of the prosecutor, of which he also complains. He argues manifest injustice and seeks an adjudication of plain error on that account. Yet, plain error is rarely found and relief rarely granted as to matters contained in closing argument. That is because the decision to object or not so often reflects a prompting of trial strategy. *State v. Wood,* 719 S.W.2d 756, 759[5] (Mo. banc 1986). The defendant is bound by that strategy. *Choate v. State,* 762 S.W.2d 87, 90[2–6] (Mo.App.1988).

█ It is even more rare to assign plain error by the failure of a court to grant relief *sua sponte* for irregular closing argument, where the prosecutor's comments go without objection or request for relief. That is simply because the failure to object denies the judge opportunity to make correction. *State v. Kempker,* 824 S.W.2d 909, 911[4] (Mo. banc 1992). Moreover, the judge courts the risk of error by such an uninvited interference in counsel's function of summation. It is for these reasons that plain error will seldom be found in unobjected closing argument. *State v. Wood,* 719 S.W.2d at 759[5]. We find neither manifest injustice nor plain error.

### Point IV

Owens next contends, somewhat redundantly, and again for plain error review, that the sentences imposed upon him under Counts IV and VIII for convictions for armed criminal action based upon the offenses of attempted robbery [Count III] and first degree assault [Count VII] were barred on grounds of double jeopardy because he was also convicted of armed criminal action under Counts II and VI based upon the "same acts of force" against the two victims, Norton and Turner. The argument acknowledges the evidence that during an attempted robbery of Norton and Turner, Norton was killed by a gunshot wound and Turner was injured by gunshot

as well. He concedes that our law "allows multiple convictions for armed criminal action based on separate offenses during a single transaction," citing *State v. Adams*, 741 S.W.2d 781 (Mo.App.1987). He argues, nevertheless, that "one act of force which supports two offenses should not also support two armed criminal action convictions." He concludes, "Nowhere in the statute does the legislature authorize such multiple armed criminal action convictions based on one act."

■ "Multiple armed criminal action convictions based on one act", however, is precisely what the legislature authorizes. As our discussion shows, § 571.015.2 expressly intends that each time a dangerous instrument or deadly weapon is used to commit certain felonies, the person commits armed criminal action. *State v. Adams*, 741 S.W.2d at 784[4]. In the course of one act, a person may violate more than one criminal statute or commit more than one felony. *State v. Charles*, 612 S.W.2d 778, 781[4, 5] (Mo. banc 1981). It disserves authentic analysis, therefore, to premise discussion in terms of a prior usage of legal doctrine since authoritatively reformulated. The "single act of force" doctrine "retains vitality in double jeopardy analysis involving multiple punishments solely to the extent that the doctrine is consistent with legislative intent." *State v. McTush*, 827 S.W.2d at 187[4]. In terms of multiple punishments for the same offense, as already noted, "the double jeopardy clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. at 366, 103 S.Ct. at 678.

■ The enactment of § 571.015, once again as already noted, makes clear that a person commits the crime of armed criminal action every time the person commits another felony with the aid or assistance of a deadly weapon. *State v. Adams*, 741 S.W.2d at 784[4]. Owens committed two separate felonies with a deadly weapon against each of the two victims. His convictions and punishments for four armed criminal action offenses in the same trial do not offend the double jeopardy principle.

We do not respond on this review for plain error to the cruel and unusual punishment theme that the defendant interweaves into the argument, without separate definition or rationale. The point is denied.

### Point V

■ Owens argues next, again as a matter of plain error, that the reasonable doubt instruction on the model of MAI–Cr3d 302.04 violated his right to due process of law. The instruction defines proof beyond a reasonable doubt as "proof that leaves you firmly convinced of the defendant's guilt." It adds, "[t]he law does not require proof that overcomes every possible doubt." Owens argues that "firmly convinced" suggests a higher degree of doubt than is constitutionally required for acquittal. He comments also that the statement, "the law does not require proof that overcomes every possible doubt," could prompt a reasonable juror to understand the instruction to allow a finding of guilt "based on a degree of proof below that required by due process." He argues the authority of *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) that a definition of "reasonable doubt" in terms of "grave certainty" and "actual substantial doubt," as understood by a juror, suggests a higher degree of doubt than required for acquittal under the reasonable doubt standard.

Our decisions have said, and continue to say, that the definition in *Cage* does not resemble the instruction MAI–Cr 3d 302.04 submits. *State v. Whitfield*, 837 S.W.2d 503, 511[18–20] (Mo. banc 1992); *State v. Griffin*, 818 S.W.2d 278, 282[7] (Mo. banc 1991). The point is denied.

### The Post-conviction Hearing Appeal

Owens contends that his trial counsel was ineffective in failing to call Pamela Douglas as a witness. He argues that Pamela Douglas testified at the trial of codefendant Darren Jacobs, two months before Owens' trial, that on the night of the shooting she was in her apartment "up the street." She saw three men and she was sure that Owens was not one of the perpe-

trators. Owens testified that he asked trial counsel to contact her right after co-defendant's trial some two months before his own trial. Counsel said that he would try to get hold of her, but did not, although she was living in town.

Trial counsel testified at the hearing that based upon a review of his trial file, Owens had not told him about Ms. Douglas. She did not testify at the evidentiary post-conviction motion hearing. Owens argues that even if counsel was not informed of the witness, his failure to learn of the witness "through reasonable investigation of the co-defendant's trial" sufficiently satisfies the deficient performance component of the proof required in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) to prevail on such a claim. The reasonable probability that the result would have been different, had the witness been called and the exculpatory evidence presented, suffices to prove prejudice from the deficient performance completes the proof of the claim, he argues.

It was the testimony of trial counsel that Owens gave him a list of persons to contact, and he reached all of them. The name Pamela Douglas was not among them, nor did it appear in his file. Nor did his review of the police reports give any indication that a Pamela Douglas or a Pamela Jacobs could have helped his client in any way.

▮ The findings of fact and conclusions of law that accompanied the order denying the post-conviction motion expressly found that Owens did not request that Pamela Jacobs or Pamela Douglas be called as a witness. This finding is supported by the record. It suffices to refute the claim of ineffective assistance of counsel. A counsel is entitled to rely upon the client to identify witnesses, and cannot be found to have been ineffective for failing to reach a witness counsel does not know exists. *State v. Twenter*, 818 S.W.2d 628, 639[19] (Mo. banc 1991); *Burton v. State*, 817 S.W.2d 928, 929[2] (Mo.App.1991).

Moreover, Ms. Douglas was not presented at the Rule 29.15 hearing. "To establish a claim of ineffective assistance of counsel for failing to locate and interview witnesses, the defendant must show not only that the witnesses could have been located through reasonable investigation, but it must also be shown that the witnesses would testify if called, and that the testimony would have provided a viable defense." *State v. Twenter*, 818 S.W.2d at 639–40. It is not enough merely to speculate that the movant was prejudiced, nor does the self-serving testimony by the movant as to what the witness would have said from the stand suffice to prove that the witness would have provided a viable defense. *State v. Buchanan*, 836 S.W.2d 90, 94[4] (Mo.App.1992).

The order denying post-conviction relief is not clearly erroneous, and is affirmed. Rule 29.15(j).

All concur.