**STATE of Missouri, Respondent,**

v.

**Alonzo D. COLEMAN, Appellant.**

**No. WD 52757.**

Missouri Court of Appeals,
Western District.

May 6, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 1, 1997.

Application to Transfer Denied
Aug. 19, 1997.

Jeannie Arterburn, Asst. Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Jefferson City, Philip M. Koppe, Assistant Attorney General, Kansas City, for respondent.

Before ULRICH, C.J., P.J., and HANNA and EDWIN H. SMITH, JJ.

ULRICH, Chief Judge, Presiding Judge.

Alonzo Coleman appeals his convictions following jury trial for second degree felony murder, section 565.021.1(2), RSMo 1994, and armed criminal action, section 571.015, RSMo

1994, and consecutive life terms of imprisonment. Mr. Coleman raises seven points of error on appeal. He contends that the trial court erred in (1) refusing to submit an instruction for the lesser–included offense of involuntary manslaughter; (2) failing to declare a mistrial when the prosecutor argued during closing argument that the jury should impose a lengthy sentence; (3) overruling his *Batson* challenge to the prosecution's removal of three venirepersons; (4) admitting into evidence his "permit to transfer firearm"; (5) sentencing him for the crime of second degree felony murder, thereby subjecting him to an 85 percent minimum sentence, instead of the crime of unlawful use of a weapon; (6) failing to submit his modified verdict director for felony murder which would have informed the jury of the mandatory minimum term law; and (7) convicting and sentencing him for both second degree felony murder and armed criminal action. The judgment of convictions is affirmed.

## FACTS

Alonzo Coleman and Ronald Woods met each other the afternoon of September 16, 1995, while picking up their children from Satchel Paige Elementary School located at 75th and Walrond in Kansas City. The men began arguing about an automobile accident in which they had been involved more than a year earlier. Both men had been injured in the accident, which occurred while Mr. Coleman was driving the vehicle in which Mr. Woods was a passenger. Mr. Woods had made several attempts to obtain compensation from Mr. Coleman.

A teacher who heard the argument asked the men to go outside. As the argument continued in the school parking lot, a security guard approached the men. Mr. Coleman went to his car, retrieved a firearm from under the seat and tucked it in his waistband. The guard informed Mr. Coleman that he could not have the firearm on school property and told him to leave. Mr. Coleman explained that he had a permit to carry the firearm and began to show it to the security guard. Mr. Woods and Mr. Coleman resumed the argument, and the guard entered the school to call the police.

Both men then entered their cars and drove away. Mr. Coleman left first, proceeding north on Walrond. Mr. Woods, with his son, Cirr, in the front seat, and his daughter, Shaunda, riding in the back seat, followed in the same direction. Mr. Woods observed Mr. Coleman turn his car around in a driveway and drive back toward his car. When the cars met, the men stopped, rolled down their windows, and again resumed their argument.

Believing that the argument was over, Mr. Woods started to drive away. Mr. Coleman also began to leave in the opposite direction. Suddenly, Mr. Coleman fired a shot from his pistol. The bullet shattered the back window of Mr. Woods's car and struck Cirr in the head. Mr. Coleman then got out of his car, walked toward the Woods' car, stopped before reaching it, and returned to his car. He drove away. In the meantime, Mr. Woods drove Cirr to Research Hospital where Cirr died as a result of the single gunshot wound to the head.

Later that day, Mr. Coleman went to the police station, and after waiving his *Miranda* rights, made a videotaped statement. In his statement, which was introduced at trial, Mr. Coleman claimed that since the car accident in April 1994, Mr. Woods had been demanding compensation from him and his wife and that when the two men met at the school on September 16, 1995, Mr. Woods again demanded money. Mr. Coleman stated that Mr. Woods continued to "bump" him, was "in his face," and lunged at him in the parking lot of the school. He claimed that as he drove out of the lot, Mr. Woods followed him. He said that he was afraid Mr. Woods might shoot him or "ram" him with his car. Mr. Coleman also stated that after he turned his car around and met Mr. Woods in the middle of the street, Mr. Woods threatened, "I'm going to get you." Mr. Coleman admitted blindly firing one shot back towards the Woods' car to scare Mr. Woods. He claimed, however, that he did not aim the pistol at anyone but tried to fire it into the air.

Testifying in his own defense at trial, Mr. Coleman again stated that he did not point the firearm at anybody but was trying to shoot it into the air. He claimed that he

feared Mr. Woods would "ram" him and cause a serious car accident.

The jury was instructed on second degree felony murder, armed criminal action, and self-defense. Mr. Coleman's request for an involuntary manslaughter instruction was denied by the trial court. Mr. Coleman was convicted of second degree felony murder and armed criminal action and sentenced to two consecutive life terms of imprisonment. This appeal followed.

## I. LESSER–INCLUDED OFFENSE INSTRUCTION

As his first point on appeal, Mr. Coleman claims that the trial court erred in refusing to submit an instruction to the jury for the lesser-included offense of involuntary manslaughter. He argues that the evidence provided a basis for both an acquittal of second degree felony murder and a conviction of involuntary manslaughter.

A trial court is obligated to instruct on a lesser-included offense only if the evidence establishes a basis for acquittal of the greater offense and conviction of the lesser-included offense. § 556.046.2, RSMo 1994; *State v. Mease,* 842 S.W.2d 98, 110–11 (Mo. banc 1992), *cert. denied,* 508 U.S. 918, 113 S.Ct. 2363, 124 L.Ed.2d 269 (1993). If a party requests an instruction and if the evidence, in fact or by inference, provides a *basis* for *both* an acquittal of the greater offense and a conviction of the lesser offense, a lesser-included offense instruction must be submitted to the jury. *State v. Dewey,* 869 S.W.2d 834, 837 (Mo.App.1994). A lesser-included offense instruction is not required where there exists "strong and substantial proof" of the greater offense charged or where the evidence does not suggest a questionable essential element of the more serious offense charged. *Id.* Undisputed facts may not be disregarded in determining an evidentiary basis for acquittal of the greater offense and conviction of the lesser. *State v. Smith,* 891 S.W.2d 461, 467 (Mo.App.1994).

Mr. Coleman was charged with second degree felony murder. A person commits the crime of second degree felony murder if he:

> [c]ommits or attempts to commit any felony, and, in the perpetration or the attempted perpetration of such felony or in the flight from the perpetration or attempted perpetration of such felony, another person is killed as a result of the perpetration or attempted perpetration of such felony or immediate flight from the perpetration of such felony or attempted perpetration of such felony.

§ 565.021.1(2), RSMo 1994. The underlying felony providing the basis of the felony murder charge in this case was unlawful use of a weapon. A person commits the crime of unlawful use of a weapon if he knowingly "[d]ischarges or shoots a firearm into a dwelling house, a railroad train, boat, aircraft, or motor vehicle." § 571.030.1(3), RSMo 1994.[1] To prove felony murder, the state need not show an intent to kill but only that the homicide occurred in the perpetration or attempted perpetration of a felony. *State v. Davis,* 797 S.W.2d 560, 563 (Mo.App. 1990). It is the intent to commit the underlying felony, not the intent to kill, that is the gravamen of the felony murder offense. *State v. Lassen,* 679 S.W.2d 363, 369 (Mo. App.1984).

Involuntary manslaughter is a lesser-included offense of second degree murder. § 565.025.2(2)(b), RSMo 1994. A person commits the crime of involuntary manslaughter if he "recklessly" causes the death of another. § 565.024.1(1), RSMo 1994. A person acts "recklessly" when "he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." § 562.016.4, RSMo 1994. Thus, "recklessness" involves conscious risk creation and resembles knowingly in that a

---

1. In 1995, the statute was modified to add subsection (9) which provides that a person commits the crime of unlawful use of a weapon if he knowingly "[d]ischarges or shoots a firearm at or from a motor vehicle ... while within any city, town, or village." § 571.030.1(9), RSMo Cum. Supp.1996. If injury or death to another person results from violation of subsection (9), it is a Class A felony. The state, however, based its felony murder indictment on subsection (3).

state of awareness is involved, but the awareness is of risk, that is of a probability less than a substantial certainty. *Smith,* 891 S.W.2d at 467 (quoting *State v. Harris,* 825 S.W.2d 644, 647–48 (Mo.App.1992)).

Mr. Coleman argues that the evidence supported an involuntary manslaughter instruction. He contends that affirmative evidence existed of a lack of an essential element of the charged felony murder—intent to shoot into the Woods' car. Mr. Coleman relies on the recent Eastern District case, *State v. Isreal,* 872 S.W.2d 647 (Mo.App.1994), in arguing that he recklessly fired the shot that hit and killed Cirr. In *Isreal,* the defendant was convicted of second degree murder, first degree assault, and armed criminal action in the shooting of two men. *Id.* At trial, the defendant testified that he and one of the victims were arguing in front of a house when the victim pulled out a knife and took a step toward him. *Id.* at 649. The defendant stated that he put his left arm over his face, crouched down, and began shooting a .22 caliber pistol. *Id.* The defendant fired all of the rounds in the pistol. *Id.* The victim with the knife was wounded, and a bystander was killed. *Id.* at 648.

On appeal, the defendant claimed that the trial court erred in refusing to submit his proffered instruction on involuntary manslaughter. *Id.* at 649. He argued that he had the right to fire the pistol in self-defense but did it recklessly. *Id.* Although numerous cases have held that an involuntary manslaughter instruction is inconsistent with a self-defense instruction and, thus, may not be submitted when a self-defense instruction is given [2], the Eastern District agreed with the defendant stating that the defendant's evidence justified a submission of a self-defense instruction and that a jury could have found that the defendant had consciously disregarded a substantial and unjustifiable risk that bystanders would be killed. *Id.* at 650.

Mr. Coleman argues the jury could have found that in protecting himself from Mr. Woods, he recklessly fired the shot that killed Cirr and, thus, was entitled to an invol-

untary manslaughter instruction along with the self-defense instruction given. Because the evidence did not support either instruction, the question of whether an involuntary manslaughter instruction and a self-defense instruction would have been inconsistent in this case need not be decided. Instead, an analysis of the evidentiary basis to support the instructions is sufficient to decide the issue in Mr. Coleman's first point on appeal.

■ Although a self-defense instruction was given to the jury, the evidence did not support it. Use of deadly force in self-defense requires the following prerequisites: (1) an absence of aggression or provocation on the part of the defendant, (2) a real or apparently real necessity for the defendant to kill in order to save himself from an immediate danger of serious bodily injury or death, (3) a reasonable cause for the defendant's belief in such necessity, and (4) an attempt by the defendant to do all within his power consistent with his personal safety to avoid the danger and the need to take a life. *State v. Crawford,* 904 S.W.2d 402, 405–406 (Mo.App.1995).

The evidence reveals, as a matter of law, that Mr. Coleman had no reasonable cause to believe that firing his weapon to kill Mr. Woods was necessary in order to save himself from immediate danger of serious bodily injury or death. Mr. Coleman testified that while the men were at the school, Mr. Woods "bumped" him, was "in his face," and "lunged" at him. There was no testimony that Mr. Woods produced a weapon or threatened Mr. Coleman with a weapon at any time on the date of the shooting.

Mr. Coleman also testified that after the men entered their cars at Sachel Page Elementary School, Mr. Woods yelled, "I'm going to get you." Mr. Coleman then drove his vehicle north on Waldron. Mr. Woods departed the school in the same direction. Mr. Coleman turned his vehicle around to advance toward Mr. Woods. Each man stopped his vehicle in proximity to the other and engaged in further argument. Mr. Cole-

---

2. *See State v. Albanese,* 920 S.W.2d 917, 925 (Mo.App.1996). Specifically, the inconsistency arises because self defense requires an intentional act whereas the crime of involuntary manslaughter requires a reckless act culminating in an unintended result. *Id.*

man stated that he was afraid Mr. Woods was going to shoot him, despite the absence of evidence that Mr. Woods had a weapon, or "ram" him with his car because his tires were turned as if "he was coming after me." The argument concluded, however, and the two men drove away in opposite directions. As they drove away, Mr. Coleman fired the fatal shot. No evidence was presented that Mr. Woods attempted to run down Mr. Coleman with his car or that he threatened Mr. Coleman with a weapon when the shot was fired. Mr. Coleman's belief that he was in immediate danger of serious injury or death was, therefore, unreasonable, and the evidence was insufficient to support a self-defense instruction.

■ Neither did the evidence support an instruction on the lesser-included offense of involuntary manslaughter. In arguing that the jury could have found that he recklessly caused the death of Cirr by shooting in the direction of the Woods' car, Mr. Coleman relies on his statement to police and his testimony at trial. His trial and pre-trial statements were that he was looking forward as he was driving away when he fired the pistol back towards the Woods' car and that he did not aim the firearm at anybody but, instead, tried to fire it into the air to scare Mr. Woods.

■ Testimony of a defendant that he did not intend to kill the victim (or in the case of a felony murder, did not intend to commit the underlying felony) is not alone determinative of whether an involuntary manslaughter instruction is mandated. *State v. Isom,* 906 S.W.2d 870, 873 (Mo.App.1995). That testimony must be measured against the facts. *Id.* A testimonial denial of intent may not authorize an instruction on manslaughter where a defendant's conduct was likely to produce death. *Id.*

■ Mr. Coleman admitted to firing one shot toward the Woods' car. The shot shattered the back window of the car and struck Cirr in the head. The bullet's trajectory was almost flat. Although Mr. Coleman denied intent, his wilful shooting toward an occupied car showed an intent to commit an act that could kill an occupant of the car.

*See State v. Smith,* 747 S.W.2d 678, 680 (Mo. App.1988)(where defendant shot a rifle towards an occupied vehicle, his conduct went beyond recklessness, and the trial court was not obligated to instruct on involuntary manslaughter). The trial court was not mandated to give the involuntary manslaughter instruction because Mr. Coleman was not looking at the Woods' car when he fired the shot toward the vehicle. His firing a shot towards an occupied car, even without looking at the car, went beyond recklessness and constituted conduct that was likely to produce death. Mr. Coleman was presumed to have intended that death follow his conduct. The evidence constituted strong and substantial proof of second degree felony murder, and Mr. Coleman's request for an instruction on the lesser-included offense of involuntary manslaughter was properly denied. Point one is denied.

## II. CLOSING ARGUMENT

■ In point two, Mr. Coleman claims that the trial court plainly erred in failing to declare, *sua sponte,* a mistrial when, during closing argument, the prosecutor urged the jury to impose a lengthy sentence because Mr. Coleman refused to accept responsibility for Cirr's death with his "ridiculous" claim of self-defense. Mr. Coleman contends that the prosecutor's comments invited the jury to punish him for the exercise of his constitutional right to a jury trial, to testify, and to present a defense. Because Mr. Coleman failed to request a mistrial and failed to raise this issue in his motion for a new trial, he requests plain error review.

■ Relief on assertions of plain error regarding closing arguments should rarely be granted and is generally denied without explanation because, "in the absence of objection and request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention." *State v. Silvey,* 894 S.W.2d 662, 670 (Mo. banc 1995)(quoting *State v. Clemmons,* 753 S.W.2d 901, 907–908 (Mo. banc 1988), *cert. denied,* 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988)). To be entitled to plain error relief, a defendant must show manifest

prejudice affecting substantial rights. *State v. Lawson*, 876 S.W.2d 770, 774 (Mo.App. 1994). A conviction will be reversed only if improper argument had a decisive effect on the jury's determination. *Id.*

■ In commenting on the evidence and the credibility of the defendant's case, a prosecutor may belittle and point to the improbability and untruthfulness of specific evidence. *State v. Kreutzer*, 928 S.W.2d 854, 872 (Mo. banc 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 752, 136 L.Ed.2d 689 (1997). In this case, Mr. Coleman offered a defense of justifiable homicide. The prosecutor's comments regarding the improbability of Mr. Coleman's version of the facts and his urging the jury to impose the maximum sentence was permissible. Mr. Coleman has not shown manifest prejudice that affects substantial rights. Plain error relief is not appropriate. Point two is denied.

### III. *BATSON* CHALLENGE

Mr. Coleman contends as his third point on appeal that the trial court plainly erred in overruling his *Batson* challenge to the state's use of peremptory strikes to remove three venirepersons from the jury. Although not specifically asserted by Mr. Coleman as to what protected group the three venirepersons belong, apparently his point is asserted because two of the three venirepersons were black females and one was a Hispanic male. He claims that the court denied his motion without allowing him the opportunity of carry his burden of purposeful discrimination.

■ The Equal Protection Clause prohibits the prosecutor's use of peremptory challenges to exclude jurors on the basis of race or gender. *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994); *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986). The trial court's determination regarding purposeful discrimination in the exercise of peremptory strikes is a finding of fact that should not be disturbed on appeal unless clearly erroneous. *State v. Griffin*, 756 S.W.2d 475, 482 (Mo. banc 1988), *cert. denied,*

490 U.S. 1113, 109 S.Ct. 3175, 104 L.Ed.2d 1036 (1989). To be clearly erroneous, the reviewing court must have a firm and definite impression that a mistake has been made. *Id.*

■ Under the procedural guidelines established by the Missouri Supreme Court in *State v. Parker*, 836 S.W.2d 930, 939–940 (Mo. banc 1992), *cert. denied,* 506 U.S. 1014, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992), if a prosecutor's use of a peremptory strike is challenged in a timely fashion on the ground that the prosecutor has engaged in race discrimination, the prosecutor is obligated to give a valid race-neutral explanation for the state's strike regardless of whether there exists a *prima facie* case of such discrimination. *State v. Jackson*, 925 S.W.2d 856, 863 (Mo.App.1996). The explanation need not be plausible or persuasive, and it is presumed to be race-neutral unless a discriminatory intent is inherent in the explanation. *Purkett v. Elem*, 514 U.S. 765, 767, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995).

■ If the prosecutor articulates race-neutral reasons, the burden shifts back to the defendant to show that the state's proffered reasons were merely pretextual and, in fact, racially (or gender) motivated. *Jackson*, 925 S.W.2d at 864. If the defendant makes such a showing, the trial court must decide if purposeful racial discrimination has been proven. *Id.*

Mr. Coleman contends that the trial court denied him the opportunity to challenge the state's proffered race-neutral explanations for removal of the venirepersons before denying his motions. During the *Batson* inquiry, Mr. Coleman challenged the removal of three venirepersons and identified the cognizable racial group to which the venirepersons belonged. The prosecutor then offered the following race-neutral explanations for the venirepersons' removals:

(1) the first venireperson had attended Southeast High School at the same time Mr. Coleman attended and indicated she might recognize him;[3]

---

**3.** *See State v. Johnson*, 775 S.W.2d 221, 224–225 (Mo.App.1989)(venirepersons's belief that he

knew the defendant was a race-neutral reason for removing that venirepersons from the panel).

(2) the second venireperson had a close friend or relative that had been prosecuted by the Jackson County Prosecutor's Office and was incarcerated in the penitentiary;[4] and

(3) the third venireperson failed to say anything during voir dire and failed to answer a question on his questionnaire.[5] The trial court accepted the race-neutral explanations and denied Mr. Coleman's challenges. Mr. Coleman did not attempt to challenge the state's explanations as pretextual at that time. Although he generally raised the denial of his *Batson* motion in his motion for a new trial, he did not specifically challenge the state's explanations.

The state argues that Mr. Coleman failed to preserve his *Batson* claim for review on appeal. It cites *State v. Jackson*, 925 S.W.2d 856, 864 (Mo.App. W.D.1996), in arguing that Mr. Coleman's failure to challenge the prosecutor's race-neutral explanation in the trial court waived his claim on appeal. In *Jackson*, the defendant did not challenge the state's explanation for removing a venireperson from the panel based on her failure to answer any questions during the *voir dire* examination. *Id.* Rather, he merely argued that the trial court should "quash the jury" and requested that the court call a "new panel." *Id.* This court found that because the defendant made no effort to challenge the state's explanation, his *Batson* claim on appeal had been waived. *Id.* (citing *State v. Fritz*, 913 S.W.2d 941, 946 (Mo.App.1996)).

Mr. Coleman relies on the recent Eastern District case, *State v. Phillips*, 941 S.W.2d 599, 604 (Mo.App.1997), in arguing that the court denied his motion without allowing him the opportunity to carry his burden of purposeful discrimination. In *Phillips*, the trial court denied the defendant's *Batson* objection to the state's use of a peremptory strike against a venireperson after the state gave its race-neutral explanation for its strike. *Id.* at 603. The defendant was then allowed to make a record of proof on the question of

pretext. *Id.* at 604. The Eastern District held that "[d]enying a *Batson* motion without allowing Defendant an opportunity to carry his burden of proving purposeful discrimination constitutes trial court error." *Id.* The court rejected the state's argument that the defendant was given an opportunity to present his case because "Defendant's 'opportunity' came after the trial court denied the motion." *Id.*

In another recent Eastern District case, *State v. Pickett*, 926 S.W.2d 872, 873 (Mo. App. E.D.1996), a defendant's *Batson* motion was overruled by the trial court after the state offered its race-neutral explanation for striking the venireperson. The defendant then attempted to cite reasons why the prosecutor's explanation was pretextual, and the trial court refused to hear the argument. *Id.* The defendant raised the denial of his *Batson* motion in his motion for a new trial. *Id.*

Based on the holding in *Jackson*, Mr. Coleman has failed to preserve his *Batson* challenge. Following the prosecutor's explanations for its peremptory strikes, Mr. Coleman did not contend that the explanations were pretextual, nor did he specifically challenge the explanations in his motion for a new trial. The procedural guidelines in *Parker* do not obligate a trial court to make a record or turn to a defendant and ask for his proof on the question of pretext. Rather, it is incumbent on the defendant to contend that the state's reasoning for a peremptory strike is pretextual and present evidence in support of the contention. *State v. Mack*, 903 S.W.2d 623, 629 (Mo.App.1995). Of course, the defendant is entitled to reasonable opportunity to prove purposeful discrimination if the defendant contends the state's reason for a peremptory strike is pretextual.

Mr. Coleman choose not to challenge the state's explanations of his *Batson* motion during the *Batson* inquiry. Although the trial court denied Mr. Coleman's *Batson* motion after the state offered its explanations,

4. *See State v. Antwine*, 743 S.W.2d 51, 66 (Mo. banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988)(striking of venirepersons because she had relatives incarcerated in the penitentiary was not racially motivated).

5. *See State v. Jackson*, 925 S.W.2d 856, 864 (Mo.App.1996)(failure of venirepersons to answer a single question during a lengthy *voir dire* examination is a legitimate and race-neutral reason for striking the venirepersons).

the court's action did not constitute error for failure to provide Mr. Coleman with an "opportunity" to present his motion as the trial court in *Phillips* had done. Instead, it was the obligation of Mr. Coleman to raise the issue of pretext to allow the court to reflect on its decision, whether the decision was a preliminary presumption that the explanation was race-neutral or a final denial of this *Batson* motion. Only if a court refuses to entertain a defendant's pretext argument after explanation by the state of the reasons for its peremptory strikes is error committed. *See Pickett,* 926 S.W.2d at 873–874. Because Mr. Coleman failed to challenge the state's explanations as pretextual, he has not preserved the issue for review on appeal. Point three is denied.

## IV. PERMIT TO TRANSFER FIREARM

In point four, Mr. Coleman claims that the trial court erred in admitting State's Exhibit 17, his "Permit to Transfer Firearm," and in denying him the opportunity to "explain his understanding of the legal effect of the permit." He argues on appeal that the permit was irrelevant to any issue in the case and was utilized to portray him as a person of bad character who knowingly carried a firearm unlawfully.

The state argues that the permit was relevant because it negated Mr. Coleman's statement to the security guard at the Satchel Paige Elementary School before the shooting that he had a permit to carry the handgun the guard saw Mr. Coleman carrying and the same statement Mr. Coleman made to the detective who conducted the videotaped interview after the shooting that the permit authorized him to carry the weapon concealed on his person. The permit only allowed Mr. Coleman to transfer the firearm from the place of purchase to his home and had expired before September 16, 1995.

The trial court is vested with broad discretion respecting the relevance and admissibility of evidence. *State v. Burns,* 795 S.W.2d 527, 531 (Mo.App.1990). The admission or exclusion of evidence will not be overturned on appeal absent abuse of discretion. *Id.* Evidence is relevant if it logically tends to prove or disprove a fact in issue or if it corroborates other material evidence. *Id.* Evidence must be excluded, however, where its probative value is outweighed by its tendency to create undue prejudice in the minds of the jury. *Id.*

Although the transcript shows that Mr. Coleman's objection to introduction of State's Exhibit 17 claimed lack of foundation, the objection and the trial court's approach in considering the objection are not clear. After the objection, the trial court immediately asked the prosecuting attorney how the exhibit was relevant and may have ruled on the objection as if it were an objection for relevancy. Mr. Coleman claims on appeal that State's Exhibit 17 was not relevant.

The contested permit was introduced at trial, over Mr. Coleman's objection. Even attributing to Mr. Coleman that his objection was that the exhibit was not relevant and that the issue was preserved, Mr. Coleman can not prevail. Whether Mr. Coleman was legally authorized to carry and conceal the hand gun may not have been relevant to the charged offenses, second degree murder and armed criminal action. Whether Mr. Coleman had a valid permit to carry the weapon would not have affected his use of the weapon. The permit would provide authority to possess the weapon at the time of the event but would not exonerate misuse of the weapon. Mr. Coleman, however, stated to the security officer at the school that saw him possess the firearm and to the interviewing detective after the shooting that he possessed the permit and that it authorized him to carry the weapon. Mr. Coleman and the security officer testified that he presented the permit to the security guard at the school. Mr. Coleman's videotaped statement, during which he stated that the permit authorized him to carry the hand gun, was also introduced as evidence. Relevancy is the relationship between the offered fact and the fact in issue to such a degree that the existence of the offered fact logically renders probable the existence of the fact in issue. *McIlroy v. Hamilton,* 539 S.W.2d 669, 676 (Mo.App.1976). The evidence that the permit was presented to the security officer and to the interviewing police detective provided

sufficient basis for introducing the permit, State's Exhibit 17.

■ The objection is next considered, *ex gratia*, as though Mr. Coleman's objection was that the state had not established proper "foundation." The witness through whom the state offered the permit was the police officer who interviewed Mr. Coleman after the shooting. He testified that the exhibit, State's Exhibit 17, was the permit that Mr. Coleman gave to him during the interview. The permit, apparently, was the same document that Mr. Coleman presented to the security guard at the school his son attended earlier in the day. The permit authorized Mr. Coleman to transfer the firearm that killed Cirr Woods from the place purchase to Mr. Coleman's residence. The language of the permit did not authorize Mr. Coleman to carry the firearm as a concealed weapon. Sufficient foundation was established to permit introduction of the permit.

The trial court's ruling admitting State's Exhibit 17 did not clearly offend the logic of the circumstances and was not arbitrary and unreasonable. *State v. Blakeburn*, 859 S.W.2d 170, 177 (Mo.App.1993). The trial court did not abuse its discretion in admitting the permit.

■ Mr. Coleman also claims that the trial court erred in not permitting him to state his understanding of the legal effect of the permit at the time of the shooting. Assuming *arguendo* that the court erred in not permitting him to state his understanding of the legal meaning of the permit, the evidence of Mr. Coleman's guilt of both charged offenses was overwhelming, and, thus, the error was harmless and does not require reversal. *State v. Coleman*, 857 S.W.2d 363, 365 (Mo.App.1993). Mr. Coleman admitted in his videotaped statement to police and in his trial testimony that he fired the shot towards the Woods' car, although he claimed to have done so in self-defense. Point four is denied.

## V. SENTENCING

In his fifth point on appeal, Mr. Coleman claims that the trial court plainly erred in sentencing him for his conviction of second degree felony murder thereby subjecting him to an eightyfive percent minimum term. He argues that the legislature designated a specific range of punishment for the offense of shooting a firearm at a motor vehicle that results in death in section 571.030.5(4), RSMo Cum.Supp.1996, and that punishment did not include a minimum term of imprisonment. Mr. Coleman contends, therefore, that he should have been convicted and sentenced under the narrower and more specific statute.

■ Where the conduct of a defendant may constitute a criminal offense under two different statutes, the prosecuting attorney may elect under which statute to proceed. *State v. Patterson*, 849 S.W.2d 153, 156 (Mo. App.1993). If one statute describes the offense in general terms and another in specific terms, the state is not limited to the more specific statute but may proceed under the broader statute. *Id.* (citing *State v. Hudson*, 793 S.W.2d 872, 879 (Mo.App.1990)).

■ Mr. Coleman's act of firing a weapon at a motor vehicle may have constituted a violation of two different statutes, section 565.021.1(2), RSMo 1994, second degree felony murder, and section 571.030.5(4), RSMo Cum.Supp.1996, unlawful use of a weapon. A defendant convicted of a "dangerous felony" and committed to the Department of Corrections must serve "eighty-five percent of the sentence imposed...." § 558.019.3. The term "dangerous felony" is defined in section 556.061(8). Second degree felony murder is defined as a dangerous felony and one convicted of the crime and committed to the Department of Corrections is required to serve eighty-five percent of the sentence imposed by the court. A defendant convicted of unlawful use of a weapon whose conduct results in the death of another is not affected by section 556.061(8) and is not required to serve eighty-five percent of the sentence imposed. The prosecuting attorney possessed discretion to charge Mr. Coleman with second degree felony murder thereby subjecting him to an eighty-five percent minimum term if convicted instead of unlawful use of a weapon. Having been convicted of second degree felony murder, the trial court did not err in sentencing Mr. Coleman for violation of that crime. Point five is denied.

## VI. VERDICT DIRECTING INSTRUCTION

In his next point on appeal, Mr. Coleman claims that the trial court erred in failing to submit his proposed "Instruction No. X," a verdict directing instruction for the crime of second degree felony murder. Proposed Instruction No. X would have informed the jury of the mandatory minimum prison term to be served before becoming eligible for parole if convicted of second degree murder.

■ Where an MAI–CR instruction is applicable under the law and Notes on Use, that instruction must be given, as written, to the exclusion of any other instruction. Rule 28.02(c); *State v. Isa,* 850 S.W.2d 876, 902 (Mo. banc 1993). A trial court will not be deemed to have committed error in submitting an instruction which follows the format of an approved criminal instruction. *State v. Hill,* 865 S.W.2d 702, 707 (Mo.App.1993).

■ The trial court in this case instructed the jury regarding the range of punishment for second degree felony murder as directed in MAI–CR3d 304.02, which does not include minimum term language. The punishment language in the instruction submitted by the trial court followed the format of approved MAI–CR3d 304.02. The trial court did not err in failing to submit Mr. Coleman's proposed modified instruction. Point six is denied.

## VII. ARMED CRIMINAL ACTION CONVICTION

In his final point, Mr. Coleman contends that the trial court plainly erred in convicting and sentencing him for both second degree felony murder and armed criminal action. He asserts that his convictions and sentences for both crimes violated the Double Jeopardy Clause of the 5th Amendment because both were based on proof that he knowingly shot into a motor vehicle.

■ The Double Jeopardy Clause affords protection against multiple punishments for the same offense in a single proceeding. *Jones v. Thomas,* 491 U.S. 376, 381, 109 S.Ct. 2522, 2525, 105 L.Ed.2d 322 (1989); *State v. Owens,* 849 S.W.2d 581, 584 (Mo.App.1993). The protection is limited to ensuring that the total punishment does not exceed that authorized by the legislature, in which lies the substantive power to define crimes and prescribe punishments. *Id.* "Thus, where a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those statutes proscribe the 'same conduct,' the prosecution may seek and the court may impose cumulative punishment under those statutes in a single proceeding without offense to the double jeopardy clause." *Owens,* 849 S.W.2d at 584 (citing *Missouri v. Hunter,* 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983)).

■ The Missouri General Assembly has authorized multiple punishments for second degree felony murder and armed criminal action. *Owens,* 849 S.W.2d at 585. The felony murder statute, section 565.021.2, RSMo 1994, provides that the punishment for second degree felony murder "shall be in addition to the punishment for commission of a related felony." The related felonies in this case were unlawful use of a weapon, section 571.030.1(3), RSMo 1994, and armed criminal action, section 571.015, RSMo 1994. The armed criminal action statute provides that the punishment imposed under it "shall be in addition to any punishment provided by law for the crime committed by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon." § 571.015.1, RSMo 1994. Both the second degree felony murder statute and the armed criminal action statute specifically authorize separate punishment for each offense. Mr. Coleman's convictions and sentences, therefore, did not subject him to double jeopardy. Point seven is denied.

The judgment of convictions is affirmed.

All concur.