STATE of Missouri, Respondent,

v.

Gary R. DEWEY, Appellant.

Gary R. DEWEY, Appellant,

v.

STATE of Missouri, Respondent.

Nos. WD 45619, WD 47934.

Missouri Court of Appeals,
Western District.

Feb. 1, 1994.

Gary E. Brotherton, Office of the State Public Defender, Columbia, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before ULRICH, P.J., and BRECKENRIDGE and SPINDEN, JJ.

ULRICH, Presiding Judge.

Gary R. Dewey, Jr., appeals his conviction and twenty-five-year sentence as a prior offender (section 558.016.2, RSMo Supp.1990) for assault in the first degree (section 565.-050, RSMo 1986) following jury trial. He also appeals the order denying, without an evidentiary hearing, his postconviction Rule 29.15 motion to vacate the conviction and sentence. These appeals are consolidated. Mr. Dewey asserts four points on appeal. He contends that the trial court erred in (1) refusing his request to submit instructions MAI–CR 3d 306.06 (self-defense) and (2) MAI–CR 3d 319.12 (lesser included offense of assault in the second degree). Mr. Dewey also contends that (3) the trial court committed plain error by permitting the prosecutor to state several times during closing argument that the "state's evidence was uncontroverted." No objection was made to the statements, nor was the issue raised in Mr. Dewey's motion for new trial. Finally, Mr. Dewey claims that (4) the circuit court erred in denying his Rule 29.15 postconviction motion without a hearing.

The judgment of conviction is affirmed. The order denying the Rule 29.15 postconviction motion without a hearing is affirmed.

James Bradley and Gary R. Dewey, Jr., were friends. In October of 1990, they lived in Chillicothe at different addresses. They were employed at K–Brook, a company located in Brookfield, and occasionally they rode to and from work together in Mr. Bradley's vehicle.

At approximately 10:00 p.m., October 26, 1990, Mr. Dewey and Mr. Bradley left work together in Mr. Bradley's vehicle. They immediately went to a bar in Brookfield, approximately three or four blocks from their place of work. After drinking beer and socializing with friends, Mr. Bradley drove Mr. Dewey back to Chillicothe. Mr. Dewey exited Mr. Bradley's vehicle at a tavern in Chillicothe, and Mr. Bradley went to his apartment to change his clothes and to clean up. Mr. Bradley returned to the tavern where Mr. Dewey was located, and Mr. Bradley drove them to another bar located in southern Chillicothe. The two men drank beer and played fooz-ball.

At 1:30 in the morning, the two men left the tavern in Mr. Bradley's vehicle and rode to Randy and Kimberly Seaman's residence in Chillicothe. Mr. Bradley had attended school with both Mr. and Mrs. Seaman. After drinking more beer, Mr. Bradley and Mr. Dewey left the Seamans' residence in Mr. Bradley's vehicle. Mr. Bradley drove Mr. Dewey home to Mr. Dewey's apartment in Chillicothe. On the way to the apartment, Mr. Dewey commented on a portion of the conversation that had occurred at the Seamans' residence. Mr. Dewey became irritated. As Mr. Bradley drove his vehicle in front of Mr. Dewey's apartment, Mr. Dewey announced that "he was going to whip [Mr.

Bradley's] ass." Mr. Bradley commented that the two men could "talk about it tomorrow." Mr. Dewey attacked Mr. Bradley in the front seat of the vehicle. Mr. Bradley testified at trial that he used his arms to push Mr. Dewey away, but he did not punch Mr. Dewey while they were seated in the front seat of the vehicle. As Mr. Bradley attempted to ward off Mr. Dewey's attack, Mr. Dewey put his hand around Mr. Bradley's neck and said he "was going to cut [him]." Mr. Bradley testified that he felt "a scratch" and later realized that he had been cut on his neck.

Mr. Bradley pushed Mr. Dewey toward the passenger side of the vehicle, and Mr. Bradley exited the vehicle through the driver's door. Mr. Bradley moved to the rear of the vehicle, and Mr. Dewey, having exited the vehicle, blocked Mr. Bradley's path. Mr. Bradley attempted to push Mr. Dewey away. Mr. Bradley testified that at this point he may have swung at Mr. Dewey in an effort to get away from him.

Mr. Dewey grabbed Mr. Bradley, and the two men began to wrestle on the ground. Mr. Dewey "kept repeating [that] he was the best there was" and "said he was going to cut [Mr. Bradley]." As they wrestled, Mr. Dewey was cutting Mr. Bradley with a knife.

Mr. Bradley eventually managed to get away and walked back to the Seaman residence. Randy Seaman immediately drove Mr. Bradley to the Hedrick Medical Center, Chillicothe, for treatment.

Mr. Bradley was treated at the hospital. The lacerations to Mr. Bradley's neck and ear required forty-eight stitches, and the emergency room physician testified that Mr. Bradley might have died from a loss of blood if his wounds had not been immediately sutured. The most serious of Mr. Bradley's injuries was a knife wound that extended from under his jaw line to the back of his hairline. The wound was a "couple of inches wide" and "[p]robably an inch deep." This wound was within a centimeter of one of Mr. Bradley's carotid arteries or jugular veins and required five subcutaneous stitches and twenty-seven superficial stitches to close. The emergency room physician testified that had Mr. Dewey's knife severed or cut one of Mr. Bradley's carotid arteries or jugular veins, without emergency medical treatment, Mr. Bradley might have died within five minutes.

Following conviction and sentencing, Mr. Dewey filed a pro se Rule 29.15 postconviction motion to set aside his conviction and sentence. The motion alleged that his conviction was erroneous because of various alleged trial errors and because his trial attorneys were ineffective. The State Public Defender's office was appointed to represent Mr. Dewey, and Mr. Dewey's attorney filed a written statement that, after reviewing the pro se motion and the records of Mr. Dewey's case, no additional facts or grounds could be alleged, and Mr. Dewey wished to proceed on the pro se motion alone.

On March 19, 1993, the case was assigned to the Honorable Stephen K. Griffin, and on April 26, 1993, the order denying Mr. Dewey's motion without an evidentiary hearing was filed together with findings of fact and conclusions of law.

Mr. Dewey timely appealed his judgment of conviction and the order denying his Rule 29.15 motion.

I.

As his first point on appeal, Mr. Dewey claims that the trial court erred in refusing his request to submit MAI–CR 3d 306.06, the self-defense instruction, further contending that sufficient evidence was presented at trial to make a prima facie showing of self-defense.

Mr. Dewey was entitled to the self-defense instruction if the issue was supported by the evidence when viewed in a light most favorable to him, *State v. Crews*, 851 S.W.2d 56, 58 (Mo.App.1993), citing *State v. Weems*, 840 S.W.2d 222, 226 (Mo. banc 1992). For Mr. Dewey to have been entitled to use deadly force in self-defense, four elements must have been met: (1) an absence of aggression or provocation on the part of the defendant; (2) a real or apparently real necessity for the defender to kill in order to save himself from an immediate danger of serious bodily injury or death, (3) a reason-

able cause for the defender's belief in such necessity, and (4) an attempt by the defendant to do all within his power consistent with his personal safety to avoid the danger and the need to take a life. *Id.* When substantial evidence exists that self-defense was appropriate, the trial court is compelled to instruct the jury using the self-defense instruction. *Id.;* MAI–CR 3rd 306.06.

■ The record of the evidence in the light most favorable to Mr. Dewey discloses that he was not entitled to a self-defense instruction. Upon returning Mr. Dewey to his residence at approximately 2:00 or 2:30 a.m. the morning of October 27, 1990, Mr. Dewey initiated physical conflict with Mr. Bradley in the front seat of Mr. Bradley's vehicle. Mr. Bradley attempted to thwart Mr. Dewey's blows and to push him away. Mr. Bradley did not strike Mr. Dewey while they were seated in Mr. Bradley's vehicle. Mr. Bradley attempted to extricate himself from the vehicle, and Mr. Dewey put his hand around Mr. Bradley's neck and said he "was going to cut [him]." Mr. Bradley felt "a scratch" and realized that he had been cut on his neck. Mr. Bradley was unarmed. Mr. Bradley pushed Mr. Dewey toward the passenger side of the vehicle and escaped from the vehicle using the driver's door. He walked to the rear of the vehicle. Mr. Dewey blocked his path. Mr. Bradley attempted to push him away and may have swung at Mr. Dewey. Mr. Dewey grabbed Mr. Bradley and the two men fell to the ground where they wrestled. Mr. Dewey "kept repeating [that] he was the best there was" and "said he was going to cut [him]." As the two men rolled on the ground, Mr. Dewey cut Mr. Bradley with a knife. Eventually, Mr. Bradley disentangled himself and walked back to the house of Randy and Kimberly Seaman.

Kimberly Seaman testified. She stated that when Mr. Bradley came back to her house, he "said that he was hitting Gary and the next thing he knew, he was cut." Mr. Dewey elected not to testify.

The evidence discloses, as a matter of law, that Mr. Dewey did not reasonably believe he was compelled to use deadly force in order to save himself from immediate danger of death, serious physical injury, rape, sodomy or kidnapping. § 563.031, RSMo 1986. The trial court correctly determined that, as a matter of law, Mr. Dewey's attack on Mr. Bradley was not justified as self-defense. Therefore, the trial court was compelled to reject Mr. Dewey's request for the self-defense instruction proposed by Mr. Dewey. Point I is denied.

## II.

Mr. Dewey next contends that the trial court erred in failing to submit to the jury the lesser included offense of assault in the second degree (MAI–CR 3d 319.12).

■ A lesser included offense instruction must be submitted where (1) a party expressly requests such an instruction (section 565.025.3, RSMo 1986); and (2) the evidence establishes a basis for a verdict acquitting the defendant of the offense charged and convicting him of the lesser included offense. *State v. Mease,* 842 S.W.2d 98, 112 (Mo. banc 1992), *cert. denied,* 508 U.S. ——, 113 S.Ct. 2363, 124 L.Ed.2d 269 (1993); section 556.046.2, RSMo 1986. A lesser included offense instruction is required only if the evidence provides a basis for acquittal of the greater offense and a conviction of the lesser included crime. *State v. Olson,* 636 S.W.2d 318, 322–23 (Mo. banc 1982). A lesser included offense instruction is not required where there exists "strong and substantial proof" of the offense charged, and the evidence does not suggest a questionable essential element of the more serious offense charged. *State v. Farley,* 863 S.W.2d 669, 671 (Mo.App.1993).

■ The evidence presented at trial disclosed that Mr. Dewey acted "intentionally." He slashed Mr. Bradley's throat with a knife, once inside Mr. Bradley's vehicle and the second time outside the vehicle as Mr. Bradley attempted to remove himself from the scene. Mr. Dewey told Mr. Bradley twice that "he was going to cut" him. The evidence at trial supported the jury's finding, beyond a reasonable doubt, the essential element that Mr. Dewey intentionally assaulted Mr. Bradley with a deadly weapon likely to produce death or serious physical injury. Although Mr. Dewey had been drinking an intoxicating beverage before the incidence,

the evidence does not support a conclusion that Mr. Dewey was so intoxicated that he did not know what he was doing. *Battle v. State,* 745 S.W.2d 730, 734 (Mo.App.1987) *cert. denied,* 488 U.S. 871, 109 S.Ct. 183, 102 L.Ed.2d 152 (1988). The jury could not consider intoxication on the issue of Mr. Dewey's mental state. *State v. Erwin,* 848 S.W.2d 476, 482 (Mo. banc 1993). The trial court correctly declined to instruct the jury on the lesser included offense of assault in the second degree. Point two is denied.

### III.

Mr. Dewey next contends that the trial court erred by allowing the prosecution during closing argument to state that the prosecution's evidence was "uncontroverted," thereby denying him due process, the presumption of innocence, and the right not to testify, as guaranteed by the fifth, sixth and fourteenth amendments to the United States Constitution, and Article I, sections 10 and 19 of the Missouri Constitution. Mr. Dewey acknowledges that review for plain error pursuant to Rule 30.20 is his only remedy because no objection at trial was made to the prosecutor's statements, nor was error alleged in Mr. Dewey's motion for a new trial.

■ Review of the record discloses that manifest injustice or miscarriage of justice did not result from the court's refusal or failure to sua sponte prevent the prosecuting attorney from stating numerous times in closing argument that the evidence was "uncontradicted," and plain error did not occur. Rule 30.20 states in part that, "[P]lain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." In *State v. McDowell,* 832 S.W.2d 333, 335 (Mo. App.1992), the Eastern District noted that while a "direct and certain" reference to a defendant's failure to testify is reversible error, the words "uncontroverted, uncontested and undenied, are all general terms which simply refer to defendant's failure to produce evidence to controvert that put on by the state," and a prosecutor may comment on a defendant's failure to offer evidence. *Id.* at 335. In *State v. Kempker,* 824 S.W.2d 909,

911 (Mo. banc 1992), the Supreme Court stated that even direct reference to a defendant's failure to testify does not warrant reversal if the defendant failed to object to the remark at trial. *Id.* at 911. Objection to a prosecutor's comment at trial allows the trial judge to take appropriate actions and to make correction, and a failure to object precludes the trial court from being aware of a defendant's dissatisfaction and from permitting the trial judge to correct the event to satisfy the requirements of the law where appropriate. *Id.* Point three is denied.

### IV.

As his fourth and final point on appeal, Mr. Dewey claims that denial of his postconviction Rule 29.15 motion without an evidentiary hearing was error because his motion counsel failed to file an amended Rule 29.15 motion, thereby abandoning him.

The record discloses that appointed counsel determined pursuant to Rule 29.15(e) that an amended motion was unwarranted and informed the court of his analysis. Therefore, Mr. Dewey cannot contend that he was "abandoned" by his appointed counsel in the postconviction proceeding. *Thurlo v. State,* 841 S.W.2d 770, 771–72 (Mo.App.1992).

■ The essence for Mr. Dewey's contention is that the additional claim that his trial counsel was ineffective for failing to object to the prosecutor's repeated references to the state's evidence as "uncontroverted" could have been added to an amended postconviction motion. Mr. Dewey is precluded from accusing his postconviction counsel of ineffectiveness in failing to allege additional grounds in an amended postconviction motion. *Lingar v. State,* 766 S.W.2d 640, 641 (Mo. banc 1989), *cert. denied,* 493 U.S. 900, 110 S.Ct. 258, 107 L.Ed.2d 207 (1989). A Rule 29.15 postconviction proceeding is directed to the validity of an appellant's conviction and sentence and is not a conduit to challenge the effectiveness of post-conviction counsel. *Id.* Additionally, because the prosecutor was not precluded from arguing the state's evidence was "uncontroverted," Mr. Dewey's postconviction counsel cannot be ineffective for failing to raise the issue in an amended Rule 29.15 motion that lacked mer-

it. *State v. McDowell*, 832 S.W.2d at 335. The motion court's findings, conclusions and judgment denying Mr. Dewey's Rule 29.15 postconviction motion are not clearly erroneous. Rule 29.15(j). Point four is denied.

The judgment of conviction is affirmed. The motion court's order denying the Rule 29.15 postconviction motion was not "clearly erroneous," (Rule 29.15(j)) and is affirmed.

All concur.