**STATE of Missouri, Respondent,**

v.

**Kendall ROGERS, Appellant.**

No. WD 54343.

Missouri Court of Appeals, Western District.

June 30, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 1, 1998.

Application for Transfer Denied Oct. 20, 1998.

Michael Joseph Smith, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Catherine Chatman, Asst. Atty. Gen., Jefferson City, for respondent.

Before ELLIS, P.J., and LOWENSTEIN and RIEDERER, JJ.

LOWENSTEIN, Judge.

Kendall Joe Rogers was jury-tried and convicted of Second Degree Murder under the felony-murder statute, § 565.021.1(2) RSMo.1994,[1] and sentenced to twenty years in prison. His appeal is based on the following two rulings: (1) the trial court erred in overruling his motion to dismiss and motion for new trial because the underlying felony used in the felony murder charge merged with the killing that resulted and is, thus, impermissible to support a felony-murder conviction; and (2) the trial court erred in refusing to instruct the jury on self-defense because the evidence showed that Rogers had a reasonable belief that he was in danger of death or serious physical injury.

Viewed in the light most favorable to the verdict, the evidence was as follows. Appellant, Kendall Joe Rogers, and Lisa Rogers were married for six or seven years, but separated in August 1996. On the night of September 21, 1996, Rogers went to a bar in Mokane in Calloway County. When he arrived, a crowd of people, including Lisa Rogers and her daughter, were socializing in a parking lot across the street from the bar. As he got out of his truck, Rogers yelled at the crowd and a man yelled back. After exchanging a few more words, Rogers entered the bar. He stayed in the bar for approximately half an hour. When Rogers exited the bar, he threw a beer bottle toward the group across the street and more angry words were exchanged. Rogers told his wife to get out of that part of town. Lisa Rogers responded, "Well, I was here first ... leave

---

1. All statutory references are to RSMo.1994 unless otherwise indicated.

us alone ... we don't want no trouble." Although, no one approached him from across the street, Rogers went to his truck and retrieved a 9mm handgun. He then returned to his side of the street and fired it once into the air in what he alleged was an attempt to scare the crowd across the street. According to the defendant's testimony, after firing the gun into the air, he pointed the gun towards the ground and then Lisa Rogers told him that he "didn't have the balls to shoot that gun." He then aimed the gun at Lisa Rogers, then lowered it, and fired again. The second shot was into the street, but the bullet ricocheted off the street and struck Ms. Rogers in the shoulder area where it went through her lung. The resultant bleeding eventually caused her death.

Rogers was charged by information with murder in the second degree in violation of § 565.021.1(2). The underlying felony alleged was Unlawful Use of a Weapon, under § 571.030.1(4), by exhibiting in an angry or threatening manner. Defense counsel moved to dismiss the information on the grounds that this felony merged into the homicide. The motion was overruled.

During the trial, defense counsel requested and offered an instruction on self-defense. To support a submission of the instruction Rogers offered the following evidence. Rogers testified that, on the night of the incident, Lisa Rogers appeared the way she usually appeared after she had used cocaine, that she would often become violent when she used cocaine, and that he feared for his safety. He further claimed that after their separation, two unidentified men had threatened to beat him up because they did not like how he treated his wife. He also testified that when he went to retrieve his gun that he heard Lisa say that someone was getting a .22 caliber gun. He knew that he did not have such a weapon, so he then thought that someone was going to shoot him. Rogers claimed that he fired his gun in the air "to scare them."

In his first point on appeal, Rogers argues that the underlying felony used in the felony-murder charge merged with the killing that resulted and is, thus, impermissible to support a felony-murder conviction. To support his argument, Rogers relies heavily upon this court's decision in *State v. Cook*, 560 S.W.2d 299 (Mo.App.1977).

In Cook, which was a judge-tried case, the facts are much different from the present case. The defendant and victim in Cook were driving along side each other in their cars, yelling obscenities at each other, when the defendant reached under the seat of his car and picked up a loaded .22 caliber revolver. Holding the revolver by the butt, defendant stuck it out the window. The revolver was discharged and the bullet that was fired from it struck and killed the victim. *Id.* at 302. In his verdict, the trial judge failed to clearly indicate whether he found Cook guilty of conventional second degree murder or second degree felony murder. Because Cook was unsure as to the trial court's basis of his guilt, his appeal included arguments against both possibilities. This court held that he was guilty of conventional second degree murder and that he could not be guilty of second degree felony murder because no distinct or separate underlying felony existed upon which to predicate application of the felony murder statute.

Specifically, the Cook court stated,

The salient facts disclose that no appreciable amount of time elapsed between the time defendant stuck the revolver out the window of the car and the shooting of the victim. This being the case, defendant's display of the revolver in a "rude, angry and threatening manner" was such an integral part of the consummated homicide that it lost its separate identity. Contrary to defendant's contention, it did not constitute a separate underlying felony proscribed by Section 564.610, supra, but was part and parcel of the homicide itself. In those countless homicide cases where deadly weapons are wielded in an unconcealed manner to inflict mortal wounds there is necessarily a period of time, fleeting in some, longer in others, when the deadly weapon is displayed in a rude, angry and threatening manner in the victim's presence. The attendant physical realities of such offenses inexorably dictate this result. Exhibiting the revolver in a rude, angry and threatening manner in the pres-

ence of the victim in the instant case was of such a fleeting nature that it was a distinct part of and inseparably related to the overall physical act required to perpetrate the homicide. Common sense dictates that flourishing the weapon in the manner heretofore mentioned and killing the victim constituted a single indivisible transaction. Such being the case, no distinct or separate underlying felony existed upon which to predicate application of the second degree felony murder rule.

*Id.* at 303–304. The facts of the present case are clearly distinguishable. Unlike the situation in Cook, where the gun was stuck out the window and immediately discharged, in the instant case there was an appreciable period of time between the first shot fired into the air and the firing of the second shot that killed the victim. The defendant testified that after he shot the gun into the air the first time, that Lisa Rogers made a comment to him, and that he heard others hollering at him. Only then did he fire the second shot into the street which ricocheted and struck the victim. Unlike the shooting in Cook, in this case, firing the weapon twice and the fatal wounding of the victim was not a "single indivisible transaction." *Id.* at 304.

Next, Defendant cites *State v. Shock*, 68 Mo. 552 (1878), for the proposition that the underlying felony in a felony murder charge could not include acts of violence to the victim which were necessary or constituent elements of the homicide itself. *Id.* at 561. However, a finding that the underlying felony does not merge into the killing in this case does not conflict with the holding in Shock. In the present case, the underlying felony is exhibiting a weapon in an angry or threatening manner, rather than a violent offense such as assault. Defendant's first shot in the air was alone sufficient to constitute commission of the underlying felony. Defendant testified that the first shot was intended to scare the entire crowd of people, not just Lisa Rogers. Only the second shot, where the defendant pointed the gun at the victim and then fired it into the street, could be

considered to have merged into the killing of Lisa Rogers. In other words, had there been no separate and distinct act of firing the gun in the air, but only the second act of pointing the gun at Ms. Rogers and then shooting into the street, it would have been difficult to have sustained a charge of felony murder. However, when the defendant fires one shot into the air, and only fires the gun after hearing comments from the crowd and a specific response from the victim, the initial firing of the gun becomes a separate divisible act.

Under his first point on appeal, defendant next argues that this court should extend the decision in *State v. Hanes*, 729 S.W.2d 612 (Mo.App.1987), to the present case. In Hane, the Eastern District of the Missouri Court of Appeals held that under those facts the act of assault was not an act independent of the homicide and thus merged into the homicide. As a result, the assault could not be deemed a separate offense which could support an instruction for felony murder. *Id.* at 617. Defendant then cites *State v. Parkhurst*, 845 S.W.2d 31 (Mo. banc 1992), arguing that exhibiting a weapon in an angry or threatening manner is the equivalent of an assault.[2]

Because this court finds that the defendant's first shot was a separate and independent act from the second shot, it is unnecessary to determine the effect of the decisions in Hanes and Parkhurst on the present case. Since the first shot was independent of the second shot, it was not a necessary element of the homicide and as such, could not merge into the killing. Defendant committed the felony offense of unlawful use of a weapon, and this was a distinct and separate offense that supports a conviction of felony murder. Point I is denied.

In his second argument on appeal, Defendant claims that the trial court erred in refusing to instruct the jury on self-defense. Specifically, Rogers argues that the evidence showed that he acted out of a reasonable belief that he was in danger of death or serious physical injury, and, as a result, he

---

**2.** The Court in Parkhurst addressed the issue in a much different context. There the Court was determining whether the defendant could argue self defense when charged with exhibiting a weapon in an angry or threatening manner. The

court, citing *State v. Ruffin*, 535 S.W.2d 135 (Mo.App.1976), held that the defendant could argue self-defense only if the facts justified the use of deadly force. *State v. Parkhurst*, 845 S.W.2d at 36.

was entitled to have the jury consider this defense.

■ In determining whether the trial court erred in refusing the instruction, this court is to view the evidence in the light most favorable to submission. *State v. Albanese*, 920 S.W.2d 917 (Mo.App.1996). The law regarding self-defense to a charge of exhibiting a weapon is set forth in *State v. Parkhurst*, 845 S.W.2d 31 (Mo. banc 1992). Self-defense is only available to a defendant charged with exhibiting a weapon in an angry and threatening manner if the facts justify the use of deadly force. *Id.* at 36. In order to be entitled to use deadly force in self-defense, four elements must have been met: (1) an absence of aggression or provocation on the part of the defendant; (2) a real or apparently real necessity for the defender to kill in order to save himself from an immediate danger of serious bodily injury or death, (3) a reasonable cause for the defender's belief in such necessity, and (4) an attempt by the defendant to do all within his power consistent with his personal safety to avoid the danger and the need to take a life. *State v. Dewey*, 869 S.W.2d 834, 836–37 (Mo.App. 1994).

■ The record of the evidence in the light most favorable to Rogers discloses that he was not entitled to a self-defense instruction. As previously mentioned, Rogers testified that, on the night of the incident, he thought that Lisa Rogers had used cocaine. He then alleges that she would often become violent when she used cocaine, and that he feared for his safety. He also claimed that he had been recently accosted by two strangers, apparently on Lisa's behalf. Finally, he testified that when he went to retrieve his gun that he heard Lisa say that someone was getting a .22 caliber gun. Because he knew that he did not have such a weapon, and he thought that Lisa also knew that he didn't own one, he then thought that someone was going to shoot him.

Applying the facts of the case to the four elements necessary to use deadly force in self-defense, Rogers cannot justify the submission of instructions on self-defense. Rogers cannot establish a real or apparently real necessity for him to have killed in order to save himself from an immediate danger of serious bodily injury or death. Neither past threats nor Ms. Rogers alleged drug use presented an immediate danger of death or serious bodily harm. There was no evidence that any of the people in the crowd displayed a weapon of any kind, or that any of them so much as crossed the street to approach him. The fact that he heard Ms. Rogers say someone was going for a .22 was not, alone, sufficient to establish a real or apparently real necessity for him to have killed Ms. Rogers.

■ Even if the facts did support a reasonable cause to believe that defendant was in immediate danger of death or serious bodily injury, according to his own testimony, Rogers had retreated to his truck and could have simply driven away. Where a person is capable of removing himself from the scene, self-defense is not justified. *State v. Powers*, 913 S.W.2d 138, 141–42 (Mo.App.1996). The trial court correctly determined that, as a matter of law, the defendant's firing of the gun was not justified as self-defense. Therefore, the trial court was compelled to reject Roger's request for the self-defense instruction. Point II is denied. The judgment is affirmed.

All concur.