# United States Court of Appeals

### For the Eighth Circuit

_____

No. 14-3074

_____

Thomas A. Bowden,

*Plaintiff - Appellee,*

v.

Steve Meinberg; Patrick Hawkins; Chris Hoffman,

*Defendant*s,

Vernon Martin,

*Defendant - Appellant,*

Benjamin Simmons; Aaron Gyurica; Wes Wagner,

*Defendant*s.

_____

No. 14-3075

_____

Thomas A. Bowden,

*Plaintiff - Appellee,*

v.

Steve Meinberg; Patrick Hawkins; Chris Hoffman,

*Defendants - Appellants,*

Vernon Martin; Benjamin Simmons; Aaron Gyurica,

*Defendant*s,

Wes Wagner,

*Defendant - Appellant.*

_____

Appeals from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: April 16, 2015
Filed: August 25, 2015

_____

Before MURPHY, COLLOTON, and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Thomas Bowden sued several law enforcement officers and the county clerk from Jefferson County, Missouri, alleging, among other claims, that they violated his rights under the Fourth Amendment. Bowden asserts that Deputy Sheriff Vernon Martin drafted, and the remaining defendants caused to be drafted, an affidavit in support of a request for an arrest warrant that led to Bowden's seizure without probable cause.

The defendants moved for summary judgment on the Fourth Amendment claims based on qualified immunity. The district court denied the motion, but we conclude that the facts taken in the light most favorable to Bowden do not show a

violation of his constitutional rights. We therefore reverse the decision of the district court.

I.

In a qualified immunity appeal, we have jurisdiction to resolve purely legal issues based on the facts assumed by the district court, or facts likely assumed by the court, when the record is viewed in the light most favorable to the non-movant. *Johnson v. Jones*, 515 U.S. 304, 313, 319 (1995). We therefore recite the facts in the light most favorable to Bowden.

Benjamin Simmons and Aaron Gyurica were fishing on a bridge near Bowden's property in rural Missouri in 2009. Bowden shouted to the men to identify themselves, and then fired a shotgun from his back deck when they failed to respond. After the gunshot, Bowden and Simmons engaged in a heated verbal altercation, during which Bowden was holding his shotgun. Bowden and Simmons each called the police, and Martin was dispatched to investigate.

Martin first spoke with Simmons and Gyurica at the residence of Simmons's grandmother, Barbara Voyles. Simmons and Gyurica reported their belief that Bowden shot at them on the bridge. They explained that they heard a gunshot and then saw leaves falling in front of them after the blast. Voyles stated that she could call Howard Wagner, the Jefferson County circuit clerk, to see what Voyles could do.

Martin next spoke with Bowden. Bowden admitted that he had fired his shotgun, but said that he shot the weapon in a direction away from Simmons and Gyurica. Martin relayed these circumstances by telephone to his supervisor, Corporal Chris Hoffman. Hoffman ordered Martin to seize the shotgun and to draft a statement averring that there was probable cause that Bowden had unlawfully used a weapon.

According to Martin, Hoffman informed him that a call was placed from Voyles's residence to Howard Wagner, the circuit clerk, who contacted Lieutenant Colonel Steve Meinberg, who in turn contacted Lieutenant Patrick Hawkins. In Martin's account, Hawkins then directed Hoffman that Martin should be ordered to seize the shotgun and draft the probable cause statement. Bowden initially named circuit clerk Howard Wagner as a defendant, but later substituted the county clerk, Wes Wagner, after discovery revealed that two calls were made from Voyles's residence to Wes Wagner's office.

After receiving direction from Hoffman, Martin returned to Bowden's residence, seized his shotgun, and obtained a written statement from him. Bowden explained that he had fired in a direction away from Simmons and Gyurica after they failed to identify themselves, because he thought their actions were "suspicious." Martin also obtained written statements from Simmons and Gyurica. They reiterated their belief that Bowden shot at them on the bridge.

Martin then drafted a probable cause statement, which read:

1. I have probable cause to believe that . . . [Bowden] committed one or more criminal offense(s):

Unlawful Use of a Weapon

2. The facts supporting this belief are as follows:

According to the victim's [sic], they reported that they parked their pick up truck on a low water bridge in the area of [Bowden's address], to fish off the bridge when a local resident Thomas Bowden shoot [sic] at them with his shotgun.

App. 243. Martin later admitted that he did not personally believe the claims of Simmons and Gyurica that Bowden had fired a weapon in their direction. Martin also

said that he did not think the facts established that Bowden had violated any Missouri law.

The Jefferson County prosecutor obtained an arrest warrant based on Martin's probable cause statement. Bowden learned that the warrant had been issued, and turned himself in. A Missouri court then held a preliminary hearing and determined that there was probable cause to believe that Bowden violated Mo. Rev. Stat. § 571.030.1(4). Under that statute, a person commits the crime of unlawful use of weapons if he "knowingly . . . [e]xhibits, in the presence of one or more persons, any weapon readily capable of lethal use in an angry or threatening manner." Bowden was acquitted following a jury trial in 2010.

Bowden filed his amended complaint in this case against Martin, Meinberg, Hawkins, Hoffman, and Wes Wagner in December 2013. The amended complaint alleged, as relevant on appeal, that the defendants violated Bowden's rights under the Fourth Amendment by causing him to be arrested without probable cause. The defendants moved for summary judgment, arguing that they were entitled to qualified immunity and, alternatively, that collateral estoppel barred Bowden from relitigating the Missouri court's determination that there was probable cause to believe Bowden violated Missouri law.

The district court denied the motions for summary judgment. The court ruled that collateral estoppel did not apply, because Bowden now sought to challenge the "integrity" of the evidence presented at the preliminary cause hearing. After noting that Martin's affidavit asserted probable cause to arrest Bowden even though Martin did not believe that probable cause existed, the court denied summary judgment because there was "a genuine issue of material fact regarding the existence of probable cause." The court ruled that Martin was not entitled to qualified immunity because "the qualified immunity inquiry is identical to the probable cause question." The district court did not specifically address the qualified immunity of the other defendants, but denied their motion for summary judgment on that issue as well. All

of the officials appeal the district court's denial of qualified immunity, and all but Martin appeal the court's ruling on collateral estoppel.

## II.

Bowden first challenges our jurisdiction over this appeal. We have jurisdiction over interlocutory appeals of orders denying qualified immunity if the appeal seeks review of a purely legal issue. *Johnson*, 515 U.S. at 313. We do not have jurisdiction to review "which facts a party may, or may not, be able to prove at trial." *Id.* In this case, the defendants contend that when the facts are viewed in the light most favorable to Bowden, they did not violate Bowden's clearly established rights under the Fourth Amendment. This is a purely legal issue over which we have jurisdiction. *Id.*; *Sherbrooke v. City of Pelican Rapids*, 513 F.3d 809, 813 (8th Cir. 2008). We review *de novo* the district court's decision on qualified immunity, viewing the evidence in the light most favorable to Bowden. *Doe v. Flaherty*, 623 F.3d 577, 583 (8th Cir. 2010).

Public officials are immune from suit if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A plaintiff seeking damages under 42 U.S.C. § 1983 must show first that the defendant's conduct violated a constitutional right and, second, that the right was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). In this case, we elect to consider the questions in that order.

Bowden first argues that Martin violated his rights under the Fourth Amendment by averring that he "ha[d] probable cause to believe" that Bowden committed an offense when Martin did not actually believe that there was probable cause. Whether probable cause existed, however, is an objective question of law. Martin's subjective belief is irrelevant to whether his affidavit included sufficient facts to establish probable cause. Indeed, we have upheld the lawfulness of an arrest

-6-

based on probable cause even where the arresting officers testified that they believed probable cause was lacking. *Warren v. City of Lincoln, Neb.*, 864 F.2d 1436, 1439-41 (8th Cir. 1989). Martin's averment that he "ha[d] probable cause to believe" that Bowden committed an offense was thus not a false statement, because the assertion set forth a legal conclusion not a statement of historical fact.

Bowden also argues that Martin intentionally or recklessly included false statements in, and omitted facts from, other portions of the probable cause statement. Much of Bowden's complaint is without merit, because it focuses on Martin's subjective beliefs. There was no falsehood in Martin's report that "[a]ccording to the victim's . . . Bowden shoot at them," because this was an accurate report of what Simmons and Gyurica told him. That Martin personally did not believe the men was not relevant to the existence of probable cause, so the omission of Martin's subjective belief did not violate the Fourth Amendment.

Bowden does complain about the omission of two historical facts: (1) that Simmons and Gyurica did not actually see Bowden fire his shotgun and (2) that Bowden told Martin that he fired the shotgun in a direction away from Simmons and Gyurica. Even assuming for the sake of analysis that Martin intentionally or recklessly omitted these facts from his affidavit, there was no violation of the Fourth Amendment. If we reconstruct a hypothetical affidavit that includes these additional facts, *see Hawkins v. Gage County, Neb.*, 759 F.3d 951, 959 (8th Cir. 2014), there was still probable cause to believe that Bowden committed an offense. That Simmons and Gyurica were not looking at Bowden when he fired does not establish that Bowden was innocent. Circumstantial evidence of Bowden shouting at the men and leaves falling from trees above them after the gunshot could lead a man of reasonable caution to infer that the gun was fired at the fishermen. Bowden's denial merely created a credibility question; it did not destroy probable cause.

Even if Bowden's account had been included and believed, moreover, there was still probable cause to believe that an offense was committed. The Missouri

statute does not require proof that a defendant fired a weapon at another person. It is an offense knowingly to "[e]xhibit[]" the firearm in the "presence" of another person "in an angry or threatening manner" when the weapon is "readily capable of lethal use." Mo. Rev. Stat. § 571.030.1(4). While Bowden denied that he fired his shotgun at the men on the bridge, he admitted that he purposefully fired the gun from his property nearby because the men did not identify themselves and he thought their behavior was suspicious. App. 245. There was probable cause to believe that Bowden knowingly "exhibited" the shotgun in the presence of the fishermen when he fired it, *see State v. Johnson*, 964 S.W.2d 465, 468 (Mo. Ct. App. 1998), that the exhibition was "angry or threatening" even if the gun was not aimed at the fishermen, *see State v. Rogers*, 976 S.W.2d 529, 532 (Mo. Ct. App. 1998), and that the weapon was "readily capable of lethal use" even if it had not yet been so used. *See State v. Wright*, 382 S.W.3d 902, 904-05 (Mo. 2012).

Because we conclude that Martin did not violate the Fourth Amendment, the alleged conspiracy by the remaining defendants to cause Martin's conduct also does not amount to a constitutional violation. *Slusarchuk v. Hoff*, 346 F.3d 1178, 1183 (8th Cir. 2003). We need not address the separate question of whether any infringed right was clearly established, although we note that the qualified immunity inquiry is *not* identical to the question of probable cause: an official enjoys qualified immunity for an objectively reasonable judgment about probable cause that turns out to be incorrect. *Anderson v. Creighton*, 483 U.S. 635, 643-44 (1987). We also do not consider whether there would be jurisdiction to review the district court's decision on collateral estoppel, and we express no view on the merits of that issue.

*        *        *

For the foregoing reasons, the order of the district court, R. Doc. 85, is reversed, and the case is remanded for further proceedings.

_____